IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ONE WISCONSIN INSTITUTE, INC.,
CITIZEN ACTION OF WISCONSIN
EDUCATION FUND, INC.,
RENEE M. GAGNER, ANITA JOHNSON,
CODY R. NELSON, JENNIFER S. TASSE,
SCOTT T. TRINDL, and MICHAEL R. WILDER,

                OPINION & ORDER

            Plaintiffs,

v.                                     15-cv-324-jdp

JUDGE GERALD C. NICHOL,
JUDGE ELSA LAMELAS,
JUDGE THOMAS BARLAND,
JUDGE HAROLD V. FROEHLICH,
JUDGE TIMOTHY VOCKE,
JUDGE JOHN FRANKE,
KEVIN J. KENNEDY, and MICHAEL HAAS,
*all in their official capacities*,

            Defendants.

---

Four government officials and two voters have, collectively, moved to intervene as defendants in this case, pursuant to Federal Rule of Civil Procedure 24. The court is not persuaded that the proposed intervenors have identified interests that would entitle them to intervene, nor is the court persuaded that their interests would be impaired if the court does not permit intervention. Moreover, the Attorney General of Wisconsin can ably represent any legitimate interests that the proposed intervenors have in this matter. The court will therefore deny the motion to intervene.

BACKGROUND

Plaintiffs challenge several voting laws that Wisconsin has enacted over the past five years. They filed a complaint on May 29, 2015, against members of the Government Accountability Board (GAB), a Wisconsin governmental entity that oversees elections and ensures the integrity of the electoral process. Defendants responded with a motion to dismiss, which was fully briefed on August 21, 2015. A little less than two weeks later, the proposed intervenors filed a motion to intervene as defendants.

The proposed intervenors are: state Senator Van Wanggaard; state Representative Kathy Bernier; Merrimac Municipal Clerk Tim McCumber; Waukesha County Clerk Kathleen Novack; and registered Wisconsin voters Ken Dragotta and Ardis Cerny. Both legislators intend to stand for re-election in the next few years. Their asserted interests in this case are ensuring that they are not defeated by fraudulent votes, avoiding the appearance of corruption in the electoral process, and defending legislation that they supported. The two clerks will be responsible for preparing ballots and for administering elections in the future. Their asserted interest in this case is preserving their power to require identification at the polls and otherwise carry out procedures designed to prevent voter fraud. The two voters' asserted interest is making sure that their votes in future elections are not cancelled out by fraudulent ballots.

ANALYSIS

The proposed intervenors move to intervene as of right, under Rule 24(a)(2). In the alternative, the proposed intervenors move for permissive intervention, under Rule 24(b). Neither type of intervention is appropriate in this case.

**A. Intervention as of right**

The Federal Rules of Civil Procedure confer "a right to intervene when: (1) the motion to intervene is timely filed; (2) the proposed intervenors possess an interest related to the subject matter of the action; (3) disposition of the action threatens to impair that interest; and (4) the named parties inadequately represent that interest." *Wis. Educ. Ass'n Council v. Walker*, 705 F.3d 640, 657-58 (7th Cir. 2013). As the moving parties, the proposed intervenors bear the burden of proving each of these elements. *Ligas ex rel. Foster v. Maram*, 478 F.3d 771, 773 (7th Cir. 2007).

Plaintiffs contend that the intervenors did not seek to intervene as promptly as they should have. Plaintiffs have a colorable, though not compelling, argument that the motion to intervene is untimely. *See generally* Dkt. 46. But there are other reasons to deny the proposed intervenors' motion, and thus the court will assume without deciding that the motion to intervene is timely.

To intervene as of right, a party must demonstrate "a direct, significant, and legally protectable interest in the question at issue in the lawsuit. . . . That interest must be unique to the proposed intervenor." *Wis. Educ. Ass'n Council*, 705 F.3d at 658 (internal citations and quotation marks omitted). This is a fact-specific inquiry, and what qualifies as a protected interest will vary from case to case. *Id.* In cases like this one, where a group of plaintiffs challenge state legislation, the court should evaluate requests to intervene with special care, lest the case be swamped by extraneous parties who would do little more than reprise the political debate that produced the legislation in the first place. *See Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967) (holding that Rule 24 was tailored for ordinary civil litigation, and that in atypical cases, intervention requires special consideration).

Here, the legislators contend that they have a special stake in the challenged legislation because they supported it as legislators. But a legislator's personal support does not give him or her an interest sufficient to support intervention. *See Buquer v. City of Indianapolis*, No. 11-cv-00708, 2013 WL 1332137, at *3 (S.D. Ind. Mar. 28, 2013) (state legislators' interest in defending legislation that they sponsored did not entitle them to intervene); *Am. Ass'n of People With Disabilities v. Herrera*, 257 F.R.D. 236, 251 (D.N.M. 2008) (state legislators and voters lacked a legally protectable interest that would entitle them to intervene in a voting rights case). If a legislator's personal support for a piece of challenged legislation gave rise to an interest sufficient to support intervention as a matter of right, then legislators would have the right to participate in every case involving a constitutional challenge to a state statute. But Rule 24 is not designed to turn the courtroom into a forum for political actors who claim ownership of the laws that they pass. The legislators' interest in defending laws that they supported does not entitle them to intervene as of right.

The legislators (as future candidates) and the voters next assert that they have legally protected interests in fraud-free elections. But any qualified citizen can run for public office in Wisconsin, and any qualified citizen can vote. And anyone who runs for office, or who votes in an election, has an interest in making sure that the result of the election is legitimate. Thus, neither the interest in being elected through fraud-free elections, nor the interest in casting a vote that will not be cancelled by a fraudulent ballot, is unique to the legislators or to the voters. The asserted interest in fraud-free elections is really just the proposed intervenors' agreement with the policy underlying the challenged legislation. Abstract agreement with the position of one side or another is not the type of "direct, significant, and

4

legally protectable" interest that gives rise to a right to intervene. *Wis. Educ. Ass'n Council*, 705 F.3d at 658. Neither the state legislators nor the voters have identified legally protected interests that would entitle them to intervene as of right, which necessarily means that they cannot show that this case threatens to impair any such interests. This is reason enough to deny their motion to intervene as of right.

The municipal and county clerks pose a more interesting question. As local officials charged with administering elections, they have at least some direct connection to legislation affecting elections. The clerks contend that so long as they would be "directly affected" by any orders issued in this case, they have an interest that justifies intervention as of right. Dkt. 34, at 4-5. To support this contention, the clerks direct the court to *Blake v. Pallan* and other cases acknowledging the general principle that "[a] state official has a sufficient interest in adjudications which will directly affect his own duties and powers under the state laws." 554 F.2d 947, 953 (9th Cir. 1977) (citing *Hines v. D'Artois*, 531 F.2d 726, 738 (5th Cir. 1976)). But the "duties and powers" that the clerks want to protect in this case are largely ministerial: the clerks will ask voters to provide identification because a state statute *requires* them to do so. The clerks do not independently create and enforce ballot integrity measures; they follow the procedures and policies that the legislature and the GAB provide. Even the training programs that the clerks develop and implement are not unbounded exercises of discretion because the clerks must give instructions that are consistent with state law. Thus, although this case may affect the tasks that county and municipal clerks will perform, the court is not persuaded that these functions are sufficiently discretionary to rise to the level of legally protected interests for purposes of Rule 24(a).

The clerks also rely on *Board of Education of Central School District No. 1 v. Allen*, in which the Supreme Court indicated that school board members had a "personal stake in the outcome" of a case when they had to choose between violating their oaths to support the Constitution and enforcing a state law that they believed to be unconstitutional. 392 U.S. 236, 269 n.5 (1968). Applying that principle to this case, if the clerks believed that Wisconsin's election laws were unconstitutional, then they would have standing to challenge those laws (just as plaintiffs have done in this case). But the clerks do not persuasively explain why the inverse is also true. Just because an official's constitutional *objection* to a state law that affects his or her duties will probably confer standing to challenge the law, it does not follow that the official's *support* for that same law will confer the right to intervene and defend it. Unlike the board members in *Allen*, the clerks do not assert that they are being forced to choose between their constitutional obligations and state law. They are instead asking to intervene so that they can continue enforcing a state law that they like. In this regard, the clerks are no different from the legislators and voters who want to intervene. There are undoubtedly other clerks who, for political or policy reasons, would prefer to join plaintiffs in their challenge. But the purpose of Rule 24 is to permit parties with legally protectable interests to intervene in cases that threaten to impair those interests, not to mass allied troops on the battlefield.

The clerks' argument that they would face new burdens if plaintiffs prevail is also unpersuasive. Consistent with Wisconsin law, the clerks have already conducted training on the challenged voter ID laws. If plaintiffs prevail in this case, then the clerks will have to retrain. But election officials will usually have an interest in maintaining the status quo because any change in election law will require effort. The interest in avoiding retraining

under constitutionally sound election regulations is simply not a substantial interest that warrants consideration.

Regardless of whether the proposed intervenors have identified legally protected interests that are at stake in this case, they have failed to demonstrate that the existing parties will not adequately represent their interests. This burden is usually "minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972). But "when the representative party is a governmental body charged by law with protecting the interests of the proposed intervenors, the representative is presumed to adequately represent their interests unless there is a showing of gross negligence or bad faith." *Ligas*, 478 F.3d at 774. Here, the Attorney General of Wisconsin is representing defendants, and under Wisconsin law, "it is the attorney general's duty to defend the constitutionality of state statutes." *State Pub. Intervenor v. Wis. Dep't of Nat. Res.*, 115 Wis. 2d 28, 339 N.W.2d 324, 327 (1983).

The proposed intervenors do not suggest that the attorney general's representation is negligent or undertaken in bad faith. Nor is their objective in this case any different from that of the attorney general: both want to see Wisconsin's election law upheld. "Where a prospective intervenor has the same goal as the party to a suit, there is a presumption that the representation in the suit is adequate." *Shea v. Angulo*, 19 F.3d 343, 347 (7th Cir. 1994).

The proposed intervenors contend that they want to make an argument in support of the challenged statutes that the attorney general and the current defendants will not make. Specifically, they would argue that plaintiffs' aggressive interpretation of the Voting Rights Act would violate the Equal Protection Clause of the Fourteenth Amendment. Dkt. 34, at 10. According to the proposed intervenors, the attorney general "will not pursue this argument because it conflicts with the State's ability to pursue various race-based initiatives." *Id.* The

7

proposed intervenors want to press their particular Equal Protection argument because they believe it would more effectively foster local control over elections. The court is not persuaded. The proposed intervenors are not pursuing a different goal, and their views on the best legal arguments to use to reach that goal amount to little more than "post-hoc quibbles" with the litigation strategy that the attorney general has pursued in this case; such quibbles do not support intervention as of right. *Wis. Educ. Ass'n Council*, 705 F.3d at 659.

The proposed intervenors cannot establish that this case will impair their legally protected interests. And, more important, the proposed intervenors cannot demonstrate that the state is failing to adequately represent any interests that they have. For these reasons, the court will deny the proposed intervenors' motion to intervene as of right under Rule 24(a).

## B. Permissive intervention

In the alternative, the proposed intervenors request permissive intervention under Rule 24(b). Beyond requiring timeliness and common questions of law and fact, "[p]ermissive intervention under Rule 24(b) is wholly discretionary." *Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 949 (7th Cir. 2000). The considerations that guide the court's exercise of that discretion include prejudice to the original parties and the potential for slowing down the case, recognizing that "Rule 24(b) is just about economy in litigation," *City of Chi. v. Fed. Emergency Mgmt. Agency*, 660 F.3d 980, 987 (7th Cir. 2011). For several reasons, the court will exercise its discretion to deny the proposed intervenors' motion for permissive intervention.

First, "[w]hen intervention of right is denied for the proposed intervenor's failure to overcome the presumption of adequate representation by the government, the case for permissive intervention disappears." *Menominee Indian Tribe of Wis. v. Thompson*, 164 F.R.D. 672, 678 (W.D. Wis. 1996). As explained above, the attorney general is adequately pursuing

the outcome that the proposed intervenors seek. The court is satisfied that the existing parties are capable of identifying and presenting the relevant issues in this case.

Second, adding the proposed intervenors could unnecessarily complicate and delay all stages of this case: discovery, dispositive motions, and trial—even if the proposed intervenors forgo filing a pre-answer motion. The proposed intervenors assure the court that they will cooperate with defendants to minimize duplicative or overlapping arguments. Dkt. 34, at 3. But "minimize" does not mean "eliminate," and the nature of this case requires a higher-than-usual commitment to a swift resolution. Plaintiffs are challenging Wisconsin's election procedures, and the court must resolve these challenges well ahead of the November 2016 election to avoid any voter confusion. *See Purcell v. Gonzalez*, 549 U.S. 1, 4-6 (2006). Thus, even minor delays to the court's resolution of this case could jeopardize the parties' ability to obtain a final judgment (and appellate review of that judgment) in time for the election.

Third, the substantive arguments that the proposed intervenors seek to make are tangential to the issues that plaintiffs raise in their complaint. The proposed intervenors not only aim to help the state stave off plaintiffs' challenges, but they want to go a step further and secure a ruling that plaintiffs' interpretation of the Voting Rights Act would violate the Equal Protection Clause. Dkt. 34, at 10. The court can resolve the specific issues in this case without wading into a broader challenge to the Voting Rights Act. Thus, permitting the proposed intervenors to expand the substantive scope of this case will hinder, rather than enhance, judicial economy.

ORDER

IT IS ORDERED that proposed intervenors Kathleen Bernier, Ardis Cerny, Kenneth Dragotta, Tim McCumber, Kathleen Novack, Van Wanggaard's motion to intervene, Dkt. 33, is DENIED.

Entered October 28, 2015.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge