IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ONE WISCONSIN INSTITUTE, INC.,
CITIZEN ACTION OF WISCONSIN
EDUCATION FUND, INC.,
RENEE M. GAGNER, ANITA JOHNSON,
CODY R. NELSON, JENNIFER S. TASSE,
SCOTT T. TRINDL, and MICHAEL R. WILDER,

                                                         OPINION & ORDER

            Plaintiffs,

      v.                                                 15-cv-324-jdp

JUDGE GERALD C. NICHOL,
JUDGE ELSA LAMELAS,
JUDGE THOMAS BARLAND,
JUDGE HAROLD V. FROEHLICH,
JUDGE TIMOTHY VOCKE,
JUDGE JOHN FRANKE,
KEVIN J. KENNEDY, and MICHAEL HAAS,
*all in their official capacities*,

            Defendants.

---

Since 2010, the Wisconsin legislature has undertaken a legislative program that has significantly changed the state's election laws. The most significant new law is 2011 Wisconsin Act 23 (Act 23), which requires voters to present one of several specified types of photo ID. But Act 23 and a handful of other new laws contain approximately a dozen new provisions relating to elections. In general, the new provisions restrict early and absentee voting and they impose new restrictions on voter registration, presumably to make election administration more efficient and to ensure the integrity of Wisconsin elections.

Plaintiffs contend that the new election laws were actually designed to suppress the votes of African Americans, Latinos, the young, the poor, and voters inclined to vote for

Democrats. Plaintiffs filed this suit challenging the new laws. They assert six counts, alleging violations of Section 2 of the Voting Rights Act and of the Federal Constitution.

Defendants have moved to dismiss several of plaintiffs' claims. First, defendants move to dismiss any claim in counts 1 and 2 that the Voter ID law violates Section 2 of the Voting Rights Act or the Constitution on the grounds that such claims are foreclosed by *Frank v. Walker*, 768 F.3d 744 (7th Cir. 2014), *cert. denied*, 135 S. Ct. 1551 (2015). Plaintiffs concede the point, although they preserve their right to argue for reversal of *Frank*. The court will grant defendants' motion as it relates to the Voter ID law.

Second, defendants move to dismiss count 3, which alleges that three of the new provisions treat classes of voters differently without a rational basis for doing so. Defendants offer purportedly rational explanations for each of the three provisions. Plaintiffs consent to the dismissal of their challenge to the provision that allows military voters (but not other overseas voters) to cast straight-ticket ballots. The court will therefore grant defendants' motion on this point. The court will also grant defendants' motion with respect to the provision that allows voters moving into Wisconsin from out of state (but not voters who move within Wisconsin) to vote in national elections in their new election districts because defendants have offered a rational explanation for that provision. But the court will deny defendants' motion with respect to the provision that disallows the use of out-of-state, expired, or technical college IDs. Plaintiffs have adequately pleaded that this provision lacks a rational basis.

Third, defendants move to dismiss count 4—plaintiffs' "partisan fencing" claim—on the grounds that a partisan fencing claim must be based on an allegation of complete disenfranchisement, not merely on the political effect of the modest burdens imposed by

facially neutral election regulations. The court will deny defendants' motion on this point because plaintiffs have alleged that the Republican legislative majority that passed the new election laws specifically intended to suppress Democratic votes.

ANALYSIS

Defendants move to dismiss certain of plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint, it is not an opportunity to undertake fact-finding or weigh evidence. In considering such a motion, the court views the complaint somewhat deferentially in that the court must accept as true all the factual allegations in the complaint. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). But the court is not bound to accept legal conclusions or threadbare allegations that merely recite the elements of a claim, and the complaint must allege facts sufficient to state a plausible claim for relief. *Id.*

Laws duly enacted by the legislature come to court with a presumption of constitutional validity, but the level of scrutiny brought to bear on these laws varies. *Heller v. Doe by Doe*, 509 U.S. 312, 319 (1993). Laws that burden fundamental rights, or that select individuals for special treatment based on suspect categories such as race or religion, will prompt some variation of strict scrutiny. Those that do not will get rational basis review, under which the law is constitutional so long as the court can discern any plausible rational explanation for it. *Id.* at 320.

For purposes of this motion, the court will accept that plaintiffs' disparate treatment claims are subject to rational basis review. But "[a] perplexing situation is presented when the rational basis standard meets the standard applied to a dismissal under [Rule] 12(b)(6)."

3

*Wroblewski v. City of Washburn*, 965 F.2d 452, 459 (7th Cir. 1992). Plaintiffs' burden under rational basis review would be "to negative every conceivable basis which might support" the law. *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993) (quoting *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (1973)). Yet the 12(b)(6) standard is supposed to be deferential to the allegations in plaintiffs' complaint. As the Seventh Circuit has explained, "[t]the solution is to take as true all of the complaint's allegations and reasonable inferences that follow, and then apply the resulting 'facts' in light of the deferential rational basis standard." *Flying J Inc. v. City of New Haven*, 549 F.3d 538, 546 (7th Cir. 2008) (internal citations and quotation marks omitted). Plaintiffs bringing claims for rational basis review must anticipate this dilemma and "allege facts sufficient to overcome the presumption of rationality that applies to government classifications." *D.B. ex rel. Kurtis B. v. Kopp*, 725 F.3d 681, 686 (7th Cir. 2013), *cert. denied*, 134 S. Ct. 1308 (2014) (internal citations and quotation marks omitted).

Also for purposes of this motion, the court will accept that the Voter ID law and the partisan fencing claim would require more strict scrutiny. Under this level of scrutiny, the court will grant defendants' motion to dismiss only if the complaint is devoid of factual allegations that could support the claim.

## A. Counts 1 and 2: claims based on the voter ID law

Plaintiffs challenge the provisions of Act 23 that require voters to show a valid photo ID at the polls. Although the Eastern District of Wisconsin held this provision to be unconstitutional and to violate Section 2 of the Voting Rights Act, the Seventh Circuit reversed that conclusion. *Frank*, 768 F.3d at 745, 755. The Seventh Circuit held that the

Wisconsin voter ID law was not materially different from the Indiana voter ID law that the Supreme Court upheld in *Crawford v. Marion County Election Board*, 553 U.S. 181 (2008).

Defendants move to dismiss any claim that Wisconsin's voter ID law is illegal, and plaintiffs concede that their challenge to Wisconsin's voter ID law is doomed under current circuit law. Plaintiffs press the claim here only to preserve the opportunity to argue for reversal of *Frank*. Defendants' motion will be granted because this court is constrained to follow *Frank*.

But I will take the opportunity to express skepticism at the notion that voter ID laws promote confidence in elections, which *Frank* accepted as a rational benefit of such laws. 768 F.3d at 750-51. My skepticism has two bases. First, for those who believe plaintiffs' story of how and why Wisconsin has a voter ID law, Wisconsin's law is a method of voter suppression, which undermines rather than promotes confidence in Wisconsin's elections. Second, "confidence" itself is a dubious benefit. Well-grounded confidence in the electoral process is a good thing, which might increase voter participation. But confidence based on anything other than rational reasons supported by evidence is either foolishness or superstition, neither of which are reasons to pass legislation or to uphold it as constitutional. Whether voter ID laws promote well-grounded confidence in the electoral process is a fact that should be verified, even if I am constrained here to accept it as an established "legislative fact."

## B.  Count 3: disparate treatment claims

Plaintiffs' complaint alleges that three of Wisconsin's classifications treat potential voters differently without a rational basis for doing so. In response to defendants' motion to dismiss, plaintiffs consent to dismissal of their claim of disparate impact arising out of

Wisconsin permitting military voters, but not other overseas voters, to vote straight-ticket. But plaintiffs defend the two other classifications that they have challenged in this case.

The first challenged classification involves voters who move. Plaintiffs contend that Wisconsin impermissibly differentiates between voters who move into the state and voters who merely move within the state. Under Wisconsin law, voters must reside in Wisconsin for 28 days before they are eligible to vote in a Wisconsin election. Wis. Stat. § 6.02(1). In addition, voters who move within Wisconsin are not eligible to vote in their new wards or districts until they have resided there for 28 days. *Id.* § 6.02(2). Thus, voters who move within Wisconsin in the 28 days before an election must vote in their old wards or districts. Residency requirements like these are not themselves unconstitutional. *See Marston v. Lewis*, 410 U.S. 679, 680-81 (1973).

But plaintiffs argue that Wisconsin has impermissibly extended preferential treatment to voters who move from outside Wisconsin. Voters who move into the state within 28 days of an election can vote in their new districts, but only for national offices (that is, for president and vice-president). Wis. Stat. § 6.15(1). Plaintiffs allege that Wisconsin has extended this preferential treatment to voters who move into the state without a rational basis for treating them differently than voters who move within the state. Plaintiffs therefore contend that Wisconsin citizens who move within Wisconsin in the 28 days before an election should also be able to vote in their new districts, and that it is irrational to treat them differently from voters who move from outside Wisconsin.

Defendants have given a rational basis for the distinction between voters who move within Wisconsin and those who move into Wisconsin. The federal Voting Rights Act requires that citizens of the United States be afforded the right to vote for president and vice-

6

president regardless of any state durational residency requirement. 52 U.S.C. § 10502(b). In other words, under federal law, Wisconsin cannot prohibit someone who moves into Wisconsin in the 28 days before an election from voting for president and vice-president. In *Marston*, the Supreme Court recognized the legitimate interests that underlie voting residency requirements for state and local elections. As defendants argue, these interests are more pressing with state and local elections because those elections occur much more frequently than do presidential elections. Thus, the residency requirements themselves have a rational basis, and Wis. Stat. § 6.15(1) provides a rational means of accommodating those who move from out of state, as required under federal law.

Plaintiffs have a decent argument that requiring those who move within Wisconsin in the 28 days before an election to vote in their old districts is an unwarranted inconvenience. But this argument is not really one based on a disparity in treatment. Ultimately, plaintiffs simply disagree with the policy underlying Wisconsin's durational residency requirements, which is an argument that should be addressed to the legislature rather than to this court. Because defendants provide a rational explanation for the differing treatment between voters who move in the 28 days before an election, the court will grant the motion to dismiss the disparate treatment claim as to this provision.

The second challenged classification concerns certain types of photo identification that are not accepted as voter IDs. Plaintiffs allege that the state has no rational basis for excluding technical college, out-of-state, and certain expired identification cards. Plaintiffs' argument is simple: if the purpose of photo identification is to confirm identity (and not residency, which must be shown by other means), then the non-qualified forms of

identification work just as well as the qualified forms, which include driver's licenses, passports, university or college IDs, and numerous other forms from various sources.

Defendants' proffered rational purposes are not persuasive. Defendants' best argument is that disallowing expired IDs is rational because it would be easier to acquire a false ID if the ID is expired. Maybe. But under the challenged law, a voter can present a driver's license that has expired since the date of the last general election. Wis. Stat. § 5.02(6m). This means that a driver's license—surely the most widespread form of voter ID—could serve as a valid voter ID for up to two years after expiration. The legislature has not disallowed expired IDs, only expired IDs of certain types, and defendants do not show how this distinction is rational.

Defendants argue that the issue is moot with respect to technical college IDs because the Government Accountability Board has adopted an emergency rule allowing technical college IDs to be used as voter IDs. But that rule is not permanent: the Wisconsin Legislature website shows that it is currently set to expire on February 8, 2016.[1] Thus, the emergency rule does not render the issue moot. If the rule were made permanent, that fact would likely cut against issuing an injunction. But the rule allowing technical college IDs is at odds with the statutory language, and there remains a reasonable potential for even a permanent administrative rule to be challenged or rescinded.

Defendants' core argument is that the legislature is entitled to draw a line somewhere so that poll workers do not have to contend with an unlimited universe of potential IDs. But this begs the question, which is whether the actual line drawn by the legislature is rational. Defendants are correct that perfection is not required; mere rationality is sufficient. But

---

[1] http://docs.legis.wisconsin.gov/code/emergency_rules/all/emr1515

8

defendants cannot make even this minimal showing by simply claiming that the legislature had to draw the line somewhere. Plaintiffs have plausibly alleged that the decision to exclude certain forms of ID was impermissibly arbitrary. The court will therefore deny the motion to dismiss the disparate treatment claim as it relates to the non-qualified forms of ID.

## C.  Count 4: the partisan fencing claim

Plaintiffs allege that certain provisions of the new laws, particularly the restrictions on early voting, are intended to suppress the vote among those who tend to vote for Democrats. Citing *Carrington v. Rush*, 380 U.S. 89, 94 (1995), plaintiffs describe this claim as one involving "partisan fencing," which they contend violates the First Amendment because it unduly burdens the fundamental right to vote. Plaintiffs also contend that such measures violate the Equal Protection Clause because they treat citizens differently based on their political views without a compelling reason for doing so. Defendants move to dismiss this claim contending that the partisan fencing doctrine applies only to laws that entirely disenfranchise some voters, as did the law challenged in *Carrington*. Defendants argue that the partisan fencing doctrine does not apply to facially neutral voting regulations that happen to have a disparate impact on a segment of the population that tends to vote a certain way. The court will deny defendants' motion to dismiss this claim.

Defendants are correct that a reasonable, facially neutral election regulation would not be unconstitutional merely because it happens to have a disparate impact on one political party. *See Burdick v. Takushi*, 504 U.S. 428, 438 (1992) ("[W]e have repeatedly upheld reasonable, politically neutral regulations that have the effect of channeling expressive activity at the polls."). But it is also true that when a state regulation subjects voters' rights "to 'severe' restrictions, the regulation must be narrowly drawn to advance a state interest of

compelling importance." *Id.* at 434 (internal citations and quotation marks omitted). As defendants concede in their reply, the Equal Protection Clause is the mechanism through which to guard against such impermissible restrictions. Dkt. 31, at 7.[2]

The voting regulations challenged in this case are not as egregious as the hypotheticals that plaintiffs propose. Wisconsin's election laws do not, for example, require Democrats to vote at some highly inconvenient time. Nor do Wisconsin's laws expressly impose a restriction on any voters based on their partisan choices. Thus, defendants are correct that plaintiffs' complaint does not allege total "fencing," at least not as the Supreme Court used the term in *Carrington*. But plaintiffs *have* alleged that the challenged regulations place undue burdens on Democratic voters in violation of the First and Fourteenth Amendments, and these allegations are not merely conclusory. For example, plaintiffs' complaint describes restrictions that impose extreme burdens on early and absentee voting in the most populated counties of the state, where Democratic voters are concentrated. *See, e.g.*, Dkt. 19, ¶¶ 64-65.

Whether Wisconsin's restrictions have actually burdened Democratic voters, and if so, to what degree, is a question of fact that cannot be resolved at the pleading stage. *See Cushing v. City of Chicago*, 3 F.3d 1156, 1163 (7th Cir. 1993). And the level of scrutiny that the court will eventually apply to these regulations will turn on how severely they burden the right to vote. *Burdick*, 504 U.S. at 434. Here, plaintiffs have alleged facts that plausibly suggest that they are entitled to relief under the First and Fourteenth Amendments. Defendants' motion to dismiss this claim will therefore be denied.

---

[2] Defendants also submit that the partisan fencing claim only complicates this case and should therefore be dismissed. But plaintiffs explicitly cite the Equal Protection Clause as one of the bases for their partisan fencing claim, so the court is not persuaded that dismissing the claim would actually simplify the case.

ORDER

IT IS ORDERED that defendants' motion to dismiss, Dkt. 21, is GRANTED in part and DENIED in part, as explained above.

Entered December 17, 2015.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge

11