UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| ONE WISCONSIN INSTITUTE, INC., *et al.*,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>GERALD C. NICHOL, *et al.*,<br><br>　　　　　Defendants. | Case No. 3:15-cv-324 |

**PLAINTIFFS' MOTION *IN LIMINE* REGARDING
LEGISLATORS' PUBLIC STATEMENTS**

**INTRODUCTION**

Plaintiffs, by their undersigned counsel, file this motion *in limine* regarding a March 2014 radio interview of then-State Senator Dale Schultz and several public statements made by Congressman and former State Senator Glenn Grothman. Each of these statements is probative of a central issue in this case—the intent with which the challenged provisions were enacted—and two of Rep. Grothman's statements are racial appeals, which are relevant to this Court's analysis of the Voting Rights Act claim in this case.

Plaintiffs anticipate that the State will object on hearsay grounds to the introduction of the evidence discussed in this motion. As set forth below, however, all of this evidence is admissible as non-hearsay and/or pursuant to an exception to the hearsay rule. This Court should therefore hold that the hearsay rule does not bar the admission of this evidence at trial.

**EVIDENCE AT ISSUE**

Plaintiffs first seek to introduce an audio recording and transcript (the latter of which is attached as Exhibit 1) of a March 12, 2014 interview of Sen. Schultz. Among other things, Schultz explained in that interview:

- "[W]e've had about 25 bills that deal with elections and voting. And I think almost anybody could say to themselves, what on earth is going on." Ex. 1 at 3:7-10.

- Sen. Schultz had begun that session thinking that "there was some lack of faith" in the voting process that needed to be addressed, but he had "come to the conclusion that . . . this is far less noble." *Id.* at 3:12-16.

- "[I]t's just, I think, sad when a political party, my political party has so lost faith in its ideas that it's pouring all of its energy into election mechanics" and "it ought to be abundantly clear to everybody in this state that there is no massive voter fraud. The only thing that we do have in this state is we have long lines of people who want to vote . . . ." *Id.* at 4:19-5:4.

- "[W]e should be pitching, as . . . political parties, our ideas for improving things in the future rather than mucking around in the mechanics and making it more confrontational at our voting sites . . . and trying to suppress the vote." *Id.* at 5:7-11.

- "[T]hese bills came up rather swiftly at the end of the session here. I don't think we gave people adequate opportunity to comment on them." *Id.* at 6:23-7:1.

Second, Plaintiffs seek to introduce the news article attached as Exhibit 2 to demonstrate that, in 2011, then-Senator Grothman kept his office open on the federal holiday honoring Dr. Martin Luther King, Jr.; that Grothman said that giving public employees the day off "is an insult to all the other taxpayers around the state"; and that, when asked if he had any plans to honor Dr. King on the holiday, Grothman said that he has "got kind of a busy schedule."

Third, Plaintiffs seek to introduce the article attached as Exhibit 3 to demonstrate that then-Senator Grothman wrote the following in 2012: "Of course, almost no black people today care about Kwanzaa—just white left-wingers who try to shove this down black people's throats in an effort to divide Americans."

Fourth, Plaintiffs seek to introduce the article attached as Exhibit 4 to demonstrate that then-Senator Grothman made the following statements in late 2013: "Between [early voting], mail absentee, and voting the day of election, you know, I mean anybody who can't vote with all those options, they've really got a problem"; "I really don't think they care that much about

2

voting in the first place, right?"; and "We can have some of these ones that are completely out of control, doing maybe 80 hours a week, we can rein them in."

Fifth, Plaintiffs seek to introduce a video and transcript (the latter of which is attached as Exhibit 5) of an April 5, 2016 interview in which Rep. Grothman, when asked about the fact that Republicans have not been able to win presidential races in Wisconsin since 1984, said, "Well, I think Hillary Clinton is about the weakest candidate the Democrats have ever put up and now we have photo ID, and I think photo ID is going to make a little bit of a difference as well."

## ARGUMENT

**A.     Exhibits 2-4**

The statements by then-Senator Grothman regarding Dr. Martin Luther King, Jr. Day, Kwanzaa, and how people who cannot vote with the options available have "really got a problem," *see* Exs. 2-4, are all admissible non-hearsay. "'If . . . an extrajudicial utterance is offered, not as an assertion to evidence the matter asserted, *but without reference to the truth of the matter asserted*, the hearsay rule does not apply.'" *Lee v. McCaughtry*, 892 F.2d 1318, 1324 (7th Cir. 1990) (emphasis in original) (quoting 6 J.H. Wigmore, *Evidence* § 1766, at 250 (1976)); *cf.* Fed. R. Evid. 801(c) (hearsay is an out-of-court statement that "a party offers in evidence to prove the truth of the matter asserted in the statement").

Here, the statements in Exhibits 2-4 plainly are not being offered for the truth of the matters asserted in those statements. On the contrary, the statements regarding Dr. Martin Luther King, Jr. Day and Kwanzaa are being offered as evidence of recent racial appeals, as evidence of then-Senator Grothman's intent with respect to the challenged provisions, and as evidence of what other lawmakers and Governor Walker knew about Grothman's intent with respect to the challenged provisions. Likewise, the statements in Exhibit 4 in which then-Senator

3

Grothman denigrated those who have difficulty voting are being offered as evidence of Grothman's hostility toward such voters and thus his intent with respect to the challenged provisions. *See generally Aetna Life Ins. Co. v. Wise*, 184 F.3d 660, 664 (7th Cir. 1999) (affirming district court's decision to admit decedent's suicide note as non-hearsay evidence because it was offered to prove intent and not for its truth); *BKCAP, LLC v. CAPTEC Franchise Trust 2000-1*, 688 F.3d 810, 814 (7th Cir. 2012) (affirming district court's admission of evidence as non-hearsay because it was offered to show intent and not to prove the truth of the matter asserted) (citing *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 694 (7th Cir. 2011)). The hearsay rule therefore does not bar the admission of Exhibits 2-4.[1]

**B.    Exhibit 5 and the Related Video**

The video in which Rep. Grothman asserted that "photo ID is going to make a little bit of a difference" in the upcoming presidential election and the transcript of that video (Exhibit 5) are admissible for the truth of the matter asserted. *First*, the pertinent statement in the video and the transcript should be admitted as a party statement or the effective equivalent thereof. *See generally* Fed. R. Evid. 801(d)(2)(C); *Michaels v. Michaels*, 767 F.2d 1185, 1201 (7th Cir. 1985) (even if declarant was not technically an agent of the opposing party, because he was authorized to make statements on the subject at issue, the statements were not hearsay and were admissible as statements of opposing party). Although the named Defendants in this case are members or staff of the Government Accountability Board, these individuals are being sued in their official capacities, and the Supreme Court has explained that "[a] suit against a state officer in his

---

[1] These statements are also admissible under some of the rationales set forth below. As explained, Grothman's statements that relate to the challenged provisions should be regarded as party statements. In addition, these statements are admissible pursuant to the residual hearsay exception: They were published in reputable sources, and there is no evidence that any corrections have been issued. Moreover, the statements are probative of intent and demonstrate that racial appeals have recently been made by a prominent Wisconsin politician.

4

official capacity is, of course, a suit against *the State*." *Diamond v. Charles*, 476 U.S. 54, 57 n.2 (1986) (emphasis added). Because the legislators who supported the enactment of the challenged provisions—including Grothman—were exercising the authority of the State in doing so, the statements of such legislators in relation to the challenged provisions are party statements. To be sure, Rep. Grothman was no longer a senator at the time he made the statement about photo ID making a difference in the upcoming presidential election; but he was a senator and a supporter of the voter ID law *at the time it was enacted*, and he thus remains an individual who participated in exercising the authority of the State in connection with the adoption of the voter ID law, meaning that his statements with respect to that law are in effect the statements of a party.

*Second*, if Rep. Grothman is unavailable for trial, his statement about the impact of the voter ID law on the upcoming presidential election should be admitted as a statement against interest. Under Federal Rule of Evidence 804(b)(3)(A), an out-of-court statement by an unavailable witness is not excluded by the rule against hearsay if the statement is one that "a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability." *Accord Am. Automotive Accessories, Inc. v. Fishman*, 175 F.3d 534, 541 (7th Cir. 1999) (applying this rule in a civil context); *see, e.g.*, *Greengrass v. Int'l Monetary Sys., Ltd.*, No. 12-C-212, 2015 WL 5673016, at *3 n.2 (E.D. Wis. Sept. 25, 2015) (recruiter's statement to jobseeker that jobseeker was unemployable was admissible "as a statement against interest, because a recruiter/headhunter has a pecuniary interest in finding viable employment candidates"). In this case, Grothman's statement in Exhibit 5 demonstrates that he believes that the voter ID law will benefit Republicans electorally

5

and it therefore supports the conclusion that, in supporting that law, Grothman intended—in violation of the Constitution—to abridge or deny voting rights for groups of voters who tend to vote Democratic. Because such a finding would be contrary to Grothman's interests, Exhibit 5 should be admitted if Grothman is unavailable for trial.

*Third*, Exhibit 5 and the related video are admissible under the residual exception to the hearsay rule. "'A statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.'" *Lottie v. W. Am. Ins. Co.*, 248 F. App'x 734, 741 (7th Cir. 2007) (quoting Fed. R. Evid. 807).

All of these factors are met here. Because there is a video of the statement at issue, there is no question that Rep. Grothman made the statement; its trustworthiness is beyond dispute. The statement is also plainly material, as it shows that Grothman believes the voter ID law will benefit Republicans electorally, and it is therefore probative of his intent in supporting that law. The combination of these factors—certainty as to the accuracy of the statement and the probative value of the statement to an important issue in this case—supports the conclusion that the Rules of Evidence and the interests of justice will be served by the admission of Exhibit 5 and the related video. And, it is not clear what evidence would be more probative of the electoral impact that Grothman believes the voter ID law will have than his recent televised statement on this issue. Exhibit 5 and the related video are thus admissible pursuant to the residual hearsay exception.

*Fourth*, Grothman's statement about the impact of the voter ID law should be considered because, Plaintiffs anticipate, Dr. Lichtman will testify at trial that this statement supports his conclusion that the challenged provisions were enacted with discriminatory intent. The Seventh Circuit has explained that an expert "may base the opinion to which he testifies on any materials on which he would base a . . . determination in his ordinary professional work, whether or not the testimony would be inadmissible if given by a nonexpert witness." *Price v. Thurmer*, 637 F.3d 831, 837–38 (7th Cir. 2011) (citing Fed. R. Evid. 703); *see also Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685, 704 (7th Cir. 2008) (en banc) ("[A]n expert is not limited to relying on admissible evidence in forming his opinion. That would be a crippling limitation because experts don't characteristically base their expert judgments on legally admissible evidence; the rules of evidence are not intended for the guidance of experts.") (citations omitted).

Under this rule, social scientists, historians, and other experts may reasonably rely upon statements in the media. *See Katt v. City of New York*, 151 F. Supp. 2d 313, 357 (S.D.N.Y. 2001); *Bolden v. City of Mobile*, 542 F. Supp. 1050, 1060–66 (S.D. Ala. 1982) (historian's expert testimony could include information from newspapers); *Bethune-Hill v. Va. State Bd. of Elections*, 114 F. Supp. 3d 323, 340-41 (E.D. Va. 2015) ("Direct evidence of discriminatory intent is not necessary to prevail [in a Voting Rights case]. . . . For evidentiary purposes, Plaintiffs may resort to various sources of information, including 'special interest group position papers,' 'press releases,' 'newspaper articles,' . . . .") (quoting *Comm. for a Fair & Balanced Map v. Ill. State Bd. of Elections*, No. 11 C 5065, 2011 WL 4837508, at *8 (N.D. Ill. Oct. 12, 2011)); *see also Scott v. Ross*, 140 F.3d 1275, 1286 (9th Cir. 1998) (sociologist expert in anti-cult movement permitted to rely upon newspaper articles); *Mann v. Univ. of Cincinnati*, 114 F.3d 1188, at *2 (6th Cir. 1997) (per curiam) (psychological expert permitted to rely upon newspaper

7

articles). Moreover, the case for considering such evidence is particularly forceful where, as here, a court, rather than a jury, is entrusted with fact-finding. *See Williams v. Illinois*, 132 S. Ct. 2221, 2235 (2012) ("When the judge sits as the trier of fact, it is presumed that the judge will understand the limited reason for the disclosure of the underlying inadmissible information and will not rely on that information for any improper purpose.").

A video of an interview and the related transcript (Exhibit 5) are precisely the types of materials that Dr. Lichtman and other historians rely upon in their ordinary professional work. *Cf.* Dkt. No. 75 (Lichtman Rpt. at 3) (report "draws upon . . . sources standard in historical and social scientific analysis," including "newspaper and other journalistic articles"). Indeed, in a broad array of cases, including Voting Rights Act cases, courts have rejected attempts to exclude expert testimony regarding the factual inferences supporting a finding of intentional discrimination—inferences drawn from a variety of sources, including contemporaneous media accounts. *See, e.g.*, *South Carolina v. United States*, No. 12-203, ECF No. 226 (D.D.C. Aug. 22, 2012) (denying motion to exclude testimony of expert witnesses who relied, in part, on newspaper articles, press releases, and social media posts); *Perez v. Perry*, No. 5:11-cv-00360, ECF No. 1131 (W.D. Tex. July 9, 2014) (allowing expert witnesses to draw on a large body of information to opine on legislative intent).

*Fifth*, if the Court does not admit Exhibit 5 and the related video for the truth of the matter asserted, it should admit those materials as non-hearsay evidence that is probative of legislative intent. As noted, Grothman's statement about the impact of the voter ID law on the upcoming presidential election demonstrates that he believes that it will benefit Republicans electorally, and it accordingly provides evidence of his intent in supporting the law.

## C. Exhibit 1 and the Related Audio Recording

The audio recording of the March 12, 2014 interview of Sen. Dale Schultz and the transcript of that interview (Exhibit 1) are likewise admissible for multiple reasons. To begin with, they should be considered because Dr. Lichtman relies upon Sen. Schultz's statements in his expert report. *See* Dkt. No. 75 (Lichtman Rpt. at 5, 47, 51-52, 59).

In addition, the audio and transcript are admissible pursuant to the residual hearsay exception: There is no doubt that Sen. Schultz made the statements attributed to him—there is a recording, *see also* Jack Craver, "Dale Schultz: 'I Am Not Willing to Defend Them Anymore," *Capital Times*, Mar. 18, 2014 (discussing interview), *available at* http://host.madison.com/ct/news/local/writers/jack_craver/dale-schultz-i-am-not-willing-to-defend-them-anymore/article_7c35 98f2-ae16-11e3-8097-0019bb2963f4.html—and the statement of a member of the Republican caucus in the State Senate that his Republican colleagues were "making it more confrontational at our voting sites . . . and trying to suppress the vote," Ex. 1 at 5:10-11, is an extraordinary assertion and highly probative of the State Senate's intent in enacting the challenged provisions. The Rules of Evidence and the interests of justice thus support the admission of Exhibit 1 and the related audio recording.

Further, the audio and transcript of the interview of Sen. Schultz are admissible as evidence of the knowledge and intent with which other lawmakers and Governor Walker acted when taking actions with respect to election-related legislation subsequent to Sen. Schultz's interview. Where an out-of-court statement is offered to prove that a listener had notice of the information contained in the statement, the rule against hearsay does not apply. *See Cook v. Navistar Int'l Transp. Corp.*, 940 F.2d 207, 213 (7th Cir. 1991) (evidence admissible over hearsay rule where "it was offered to show actual or constructive knowledge"); *see also United*

*States v. Linwood*, 142 F.3d 418, 425 (7th Cir. 1998) ("[t]he case law of this Circuit leaves no doubt that [offering out-of-court statement to show effect on listener] is a non-hearsay purpose"); *United States v. Hanson*, 994 F.2d 403, 406 (7th Cir. 1993).  Here, the statements that Sen. Schultz made in the March 12, 2014 interview are probative of the knowledge and intent of members of the State Assembly and Governor Walker in enacting the legislation eliminating weekend and evening in-person absentee voting,[2] and of Governor Walker's knowledge and intent in signing 2013 Wis. Act 177,[3] which requires that observation areas be placed within three to eight feet of the tables at which voters sign in and obtain their ballots and register to vote, and 2013 Wis. Act 182,[4] which requires that all individuals registering to vote, other than overseas and military voters, provide documentary proof of residence irrespective of when they register.

## CONCLUSION

For the reasons set forth above, the Court should hold that the hearsay rule does not bar the admission of the evidence addressed in this motion *in limine*.

---

[2] This was passed by the State Assembly on March 20, 2014, and signed by Governor Walker, with a partial veto, a week later.  *See* https://docs.legis.wisconsin.gov/2013/proposals/sb324.
[3] This was signed on April 2, 2014.  *See* https://docs.legis.wisconsin.gov/2013/proposals/ab202.
[4] This was signed on April 2, 2014.  *See* https://docs.legis.wisconsin.gov/2013/proposals/sb267.

Dated this 2nd day of May, 2016.          Respectfully submitted,

                                          **PERKINS COIE LLP**

                                    By    *s/ Joshua L. Kaul*

                                          Joshua L. Kaul
                                          JKaul@perkinscoie.com
                                          Charles G. Curtis, Jr.
                                          CCurtis@perkinscoie.com
                                          One East Main Street, Suite 201
                                          Madison, WI  53703
                                          Telephone:  (608) 663-7460
                                          Facsimile:  (608) 663-7499

                                          Marc E. Elias
                                          MElias@perkinscoie.com
                                          Bruce V. Spiva
                                          BSpiva@perkinscoie.com
                                          Elisabeth C. Frost
                                          EFrost@perkinscoie.com
                                          Rhett P. Martin
                                          RMartin@perkinscoie.com
                                          Joseph P. Wenzinger
                                          JWenzinger@perkinscoie.com
                                          Aria C. Branch
                                          ABranch@perkinscoie.com
                                          Colin Z. Allred
                                          CAllred@perkinscoie.com
                                          700 Thirteenth Street, N.W., Suite 600
                                          Washington, D.C.  20005-3960
                                          Telephone:  (202) 654-6200
                                          Facsimile:  (202) 654-6211

                                          Bobbie J. Wilson
                                          BWilson@perkinscoie.com
                                          505 Howard Street, Suite 1000
                                          San Francisco, CA  94105
                                          Telephone:  (415) 344-7000
                                          Facsimile:  (415) 344-7050

                                          *Attorneys for Plaintiffs*