IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ONE WISCONSIN INSTITUTE, INC.,
CITIZEN ACTION OF WISCONSIN EDUCATION
FUND, INC., RENEE M. GAGNER,
ANITA JOHNSON, CODY R. NELSON,
JENNIFER S. TASSE, SCOTT T. TRINDL,
MICHAEL R. WILDER, JOHNNY M. RANDLE,
DAVID WALKER, DAVID APONTE, and
CASSANDRA M. SILAS,

                Plaintiffs,

    v.

JUDGE GERALD C. NICHOL,
JUDGE ELSA LAMELAS,
JUDGE THOMAS BARLAND,
JUDGE HAROLD V. FROEHLICH,
JUDGE TIMOTHY VOCKE,
JUDGE JOHN FRANKE,
KEVIN J. KENNEDY, MICHAEL HAAS,
MARK GOTTLIEB, and PATRICK FERNAN,
*all in their official capacities*,

                Defendants.

**FINAL PRETRIAL
CONFERENCE ORDER**

15-cv-324-jdp

---

The court held a final pretrial conference on May 12, 2016, before United States District Judge James D. Peterson. Plaintiffs appeared by counsel Chuck Curtis, Josh Kaul, Bobbie Wilson, and Bruce Spiva. Defendants appeared by counsel Mike Murphy, Gabe Johnson-Karp, Clay Kawski, and Jody Schmelzer.

The parties predicted that the case will take nine days to try, beginning on Monday, May 16, 2016, and lasting through Thursday, May 26, 2016. Trial days will generally begin at 8:00 a.m. and will run until 6:00 p.m., with about an hour for lunch, a short break in the

morning, and another in the afternoon. The trial will begin with short opening statements by both parties.

Witnesses will not be sequestered. At this point, the court does not make any ruling restricting counsel's communication with witnesses during breaks in testimony. The parties may address this issue with the court before trial.

The parties indicated that they will cooperate with respect to witness and exhibit disclosures.

The court advised the parties that they should familiarize themselves with the courtroom's visual presentation system. The parties should use the microphones at all times and address all objections to the bench, not to opposing counsel. If the parties need to consult with one another, then they should ask for permission to do so. Only the lawyer questioning a particular witness may object to questions put to the witness by the opposing party.

If one party calls an opposing party's witness as an adverse witness, then the opposing party may choose whether to ask only clarifying questions of the witness and then call the witness in its own case, or to do all of its questioning at that time, in which case the party calling the witness will have an opportunity to respond with questioning. The parties have the same two options for all adverse witnesses; they are not bound by their decision on how to question a previous adverse witness. The parties should inform the court which approach they will be taking before beginning the examination.

Each side must submit to the court copies of the condensed form of the deposition transcripts in the case, as well as copies of exhibits from each side, by 7:30 a.m. on May 16, 2016. The parties should submit their deposition transcripts and exhibits on optical disk.

Each side should also submit an exhibit list in standard form, indicating exhibits to which the other side has objected. The parties are responsible for keeping track of exhibits entered into evidence.

The following rulings are made on the parties' motions in limine:

1. **Plaintiffs' motion in limine**

This motion, Dkt. 160, is GRANTED. Plaintiffs move to admit five exhibits (and the underlying evidence for each exhibit) containing public statements made by Wisconsin legislators. The parties have stipulated to admit Exhibits 2 through 5, Dkt. 161, at 1, and so the court will grant this aspect of plaintiffs' motion in limine as unopposed.

With regard to Exhibit 1 and the underlying evidence, plaintiffs contend that former state senator Dale Schultz's statements on a radio talk show are admissible: (1) because plaintiffs' expert relied on them in reaching his conclusions; (2) under the residual hearsay exception; and (3) as non-hearsay that is offered to prove the effect on the listeners (i.e., other legislators and the governor). Although the court is skeptical about the probative value of Shultz's statements, it may consider them as part of the basis for plaintiffs' expert opinion, and it will admit them as substantive evidence under the residual hearsay exception. *See* Fed. R. Evid. 807.

To be admissible under Rule 807, a statement must: (1) have equivalent circumstantial guarantees of trustworthiness; (2) be offered as evidence of a material fact; (3) be more probative on the point for which it is offered than any other evidence that the proponent could obtain through reasonable efforts; and (4) if admitted, serve the purposes of the Federal Rules of Evidence and the interests of justice. The proponent of the statement

must also give an adverse party reasonable notice of its intent to offer the statement. *Id.*[1] The court must define these conditions narrowly to avoid "dramatically revising the hearsay rule." *United States v. Sinclair*, 74 F.3d 753, 759 (7th Cir. 1996). But the Seventh Circuit has "applied a 'near-miss' approach, holding that Rule 807 is applicable to hearsay of a type that a more specific rule also addresses, even if the particular hearsay evidence at issue does not quite meet the criteria for admission under the more specific rule." *Volland-Golden v. City of Chicago*, 89 F. Supp. 3d 983, 992 (N.D. Ill. 2015) (citing *United States v. Guinan*, 836 F.2d 350, 354-55 (7th Cir. 1988), and *United States v. Boulahanis*, 677 F.2d 586, 588-89 (7th Cir. 1982)). Here, although the state senator's statements were made to the media, they are a "near miss" in that they are nearly identical to the types of statements that would be part of the legislative record. Had the senator made the comments on the senate floor or in a written press release, there likely would not be any dispute about admitting them as part of the legislative record for the provisions that plaintiffs are challenging. Under the circumstances of this case, the statements are admissible under Rule 807. The extent to which they are probative of legislative intent will be a question of weight.

Even if Rule 807 did not provide a basis for admitting the statements, the court could still consider them in evaluating the testimony of plaintiffs' expert.

2. **Defendants' motions in limine**

These motions, Dkt. 154, are DEFERRED in part and DENIED in part.

The court will defer ruling on whether to admit expert testimony from Barry Burden, PhD. The plain language of the Voting Rights Act requires the court to review the "totality of the circumstances" to determine whether Wisconsin's elections "are not equally open to

---

[1] Defendants do not contend that they received insufficient notice of the statements.

participation by members of a [protected] class of citizens." 52 U.S.C. § 10301(b). Thus, although Dr. Burden structured his expert report around the so-called Senate factors that may or may not apply to voter qualification cases, his analysis is still relevant to the ultimate issues in this case, which involve consideration of the totality of the circumstances. The court will not strike Dr. Burden's report or prevent him from testifying simply because he structured his analysis along the lines of the Senate factors.

Dr. Burden's expert report provides several examples of private discrimination that has occurred in Wisconsin, as well as examples of discriminatory policies that individual municipalities (e.g., the City of Milwaukee) have enacted. But based on the Seventh Circuit's decision in *Frank v. Walker*, 768 F.3d 744 (7th Cir. 2014), *cert. denied*, 135 S. Ct. 1551 (2015), it is not yet clear how much of Dr. Burden's testimony will be relevant to plaintiffs' claims under the Voting Rights Act. In *Frank*, the Seventh Circuit concluded that "units of government are responsible for *their own* discrimination but not for rectifying the effects of other persons' discrimination." 768 F.3d at 753 (emphasis added). Setting aside the question of whether municipalities in Wisconsin and the *State* of Wisconsin are the same "unit of government" for purposes of the Voting Rights Act, the court cannot yet conclude that Dr. Burden's opinions about the history of discrimination in Wisconsin are irrelevant. The court will therefore defer ruling on the admissibility of Dr. Burden's testimony until after trial.

The court will deny defendants' motion to exclude the expert report and testimony of Yair Ghitza, PhD. Dr. Ghitza's disclosures complied with Federal Rule of Civil Procedure 26, even though he did not disclose his underlying algorithm. Defendants did not file a motion to compel disclosure of this algorithm, and they had other means of verifying the accuracy of

Dr. Ghitza's methods. Defendants' challenges to the reliability of Dr. Ghitza's opinions go to weight and are not a basis for preventing him from testifying.

The court will also deny defendants' motion to introduce evidence of two of the individual plaintiffs' prior felony convictions. Because the convictions are stale, they are not admissible as impeachment evidence under Federal Rule of Evidence 609(b). During the final pretrial conference, defendants were not able to articulate any other permissible reason for introducing this evidence or explain how it is relevant to the issues in this case. Indeed, it is irrelevant that two individuals were unable to vote many years ago; what matters is that they want to vote now and they allege that they have a harder time doing so because of the challenged laws. And even if there were some marginal relevance to their convictions, the probative value of these convictions is substantially outweighed by the prejudice that it creates for the individual plaintiffs and the time that would be wasted by presenting this evidence. Fed. R. Evid. 403.

Entered May 13, 2016.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge