IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ONE WISCONSIN INSTITUTE, INC.,
CITIZEN ACTION OF WISCONSIN EDUCATION
FUND, INC., RENEE M. GAGNER,
ANITA JOHNSON, CODY R. NELSON,
JENNIFER S. TASSE, SCOTT T. TRINDL,
MICHAEL R. WILDER, JOHNNY M. RANDLE,
DAVID WALKER, DAVID APONTE, and
CASSANDRA M. SILAS,

        Plaintiffs,

  v.

MARK L. THOMSEN, ANN S. JACOBS,
BEVERLY R. GILL, JULIE M. GLANCEY,
STEVE KING, DON M. MILLS,
MICHAEL HAAS, MARK GOTTLIEB, and
KRISTINA BOARDMAN,
*all in their official capacities*,

        Defendants.

ORDER

15-cv-324-jdp

---

    Plaintiffs prevailed on some, but not all, of their challenges to changes in Wisconsin's election laws. The court enjoined enforcement of those laws that it found to be unconstitutional. Both sides have appealed. Dkt. 236 and Dkt. 240.

    Defendants now move to stay the court's injunction pending appeal. Dkt. 241. Defendants contend that it is likely that the court's decision will be reversed on appeal and that the injunction would require "a vast overhaul of state election procedures," which would require enormous effort and confuse voters. Dkt. 251, at 2. But defendants' description of the court's injunction is, to put it mildly, an exaggeration. The injunction requires modest, but meaningful, adjustments to a few election procedures and requirements. Yet it leaves in place the framework that the legislature has chosen, particularly the strict voter ID law, under

which no one votes without an acceptable photo ID. Defendants have not made a strong showing that they are likely to succeed on the merits of their appeal: the court is not persuaded that any aspect of its decision was wrong. Accordingly, the court will deny the motion to stay, in all but one respect.

The court will stay the requirement that the state fundamentally reform the IDPP before the next election. To be clear: the state must reform the IDPP because the current process prevents some qualified electors from getting acceptable IDs, and even successful petitioners must often endure undue burdens before getting those IDs. But the state's emergency measures already in place will allow anyone who enters the IDPP to get a receipt that will serve as a valid ID for the November 2016 election. This is not a permanent solution because the long-term status of the receipts is uncertain. But the required reform can wait until the parties complete their appeal.

ANALYSIS

Pursuant to Federal Rule of Civil Procedure 62(c), this court has the authority to stay an injunction while an appeal of the order granting that injunction is pending. "To determine whether to grant a stay, [the court] consider[s] the moving party's likelihood of success on the merits, the irreparable harm that will result to each side if the stay is either granted or denied in error, and whether the public interest favors one side or the other." *In re A & F Enters., Inc. II*, 742 F.3d 763, 766 (7th Cir. 2014). The court uses a "sliding scale" approach: "the greater the moving party's likelihood of success on the merits, the less heavily the balance of harms must weigh in its favor, and vice versa." *Id.*

A. **Defendants' likelihood of success on the merits**

Defendants have not shown a strong likelihood of success on the merits. Defendants principally stand on their post-trial brief to explain why their position on the merits of the case is correct. *See* Dkt. 241, at 3 n.1. The court's opinion, Dkt. 234, thoroughly explains the court's reasons for rejecting defendants' arguments. But defendants' motion to stay makes six specific criticisms of the court's opinion. These are not entirely new points, but the court will address each one.

First, defendants contend that the one-location rule for in-person absentee voting was in effect long before the rest of the challenged provisions. According to defendants, plaintiffs' "core challenge is that the Legislature should have changed a long-standing law" and that the court ruled "that a *non-change* to an existing law is unconstitutional." Dkt. 241, at 4 (original emphasis). Not true. Plaintiffs did not challenge the legislature's failure to change the law. Plaintiffs' challenge, and the court's conclusion, was that the long-standing one-location rule is unconstitutional under the *Anderson-Burdick* framework, particularly when combined with limits on the hours available for in-person absentee voting.

Second, defendants contend that "[s]tatewide regulation of in-person absentee timing is necessary for orderly and effective elections," and that by eliminating the state's restrictions on the hours for in-person absentee voting, the court has imposed burdens on municipal clerks and allowed inconsistent hours across municipalities. *Id.* This is not a new argument, and it is wrong in two ways. First, Wisconsin law allows municipal clerks to set their own hours for in-person absentee voting, so the challenged law simply does not eliminate inconsistency in voting hours. Before Wisconsin enacted the challenged provisions, municipal clerks could set whatever hours they wanted to set. Under the new laws, municipal

3

clerks can still set whatever hours they want to set, provided that those hours are within a 10-day window before the election and between 8:00 a.m. and 7:00 p.m. Some communities offer in-person absentee voting for only a few hours, so the state allows vast inconsistency. Second, the court's injunction imposes no burden on anyone: under the injunction, municipal clerks can set the hours for in-person absentee voting based on the needs of their communities; no clerks are required to offer more than 10 days or weekend voting. Defendants have not explained how they will reconcile the inconsistency between their justifications for the challenged provisions and what those provisions actually accomplish. Moreover, they have not explained how they will overcome the strong evidence of intentional race discrimination that led the court to invalidate these restrictions under the Fifteenth Amendment.

Third, defendants contend that the court's conclusions about Wisconsin's registration requirements (i.e., requiring dorm lists to indicate a student's citizenship and imposing a 28-day durational residency requirement) were contrary to binding precedent. For support, they direct the court to *Frank v. Walker*, in which the Seventh Circuit stated that "[r]egistering to vote is easy in Wisconsin." 768 F.3d 744, 748 (7th Cir. 2014), *cert. denied*, 135 S. Ct. 1551 (2015). *Frank* did not involve a challenge to Wisconsin's registration requirements, and this statement (which was to set up a point about the number of registered voters who lacked a qualifying ID being comparatively small) is hardly "binding precedent" that spells certain reversal in this case. The Seventh Circuit has not categorically held that Wisconsin's voting registration rules are impervious to constitutional review.

As for the durational residency requirement, defendants are correct that the Supreme Court has upheld requirements that were longer than Wisconsin's 28-day rule. *See, e.g., Burns*

4

*v. Fortson*, 410 U.S. 686 (1973) (per curiam) (50-day requirement). But the challenge in this case was to the legislature's decision to *increase* the existing 10-day requirement to 28 days.[1] The court concluded that although durational residency requirements are justifiable to prevent certain types of election fraud, defendants had offered no justification for the increase. Defendants did not explain at trial, or in their post-trial brief, and they have not explained in their motion for a stay, how a 10-day rule was insufficient to prevent the types of election fraud that durational residency requirements are designed to prevent. Nor have defendants explained how a 28-day rule *better* prevents those types of fraud. The increase in the durational residency requirement imposes severe burdens on those whom it affects, and defendants offered no plausible justification for imposing those burdens.

Fourth, defendants contend that the court discredited their evidence of the security, accuracy, and efficiency considerations that justified the challenged provision preventing municipal clerks from sending absentee ballots by fax or email. That is correct: the court concluded that these justifications were not persuasive because defendants had not presented evidence suggesting that there were genuine or widespread problems with delivering ballots electronically. These justifications were particularly suspect because the legislature *requires* clerks to send ballots electronically to certain categories of voters (those in the military or permanently residing overseas).

---

[1] In their reply—and for the first time in this case—defendants express confusion at what the state of the law currently is for Wisconsin's durational residency requirement. Dkt. 251, at 6. There is no genuine confusion. The court concluded that "the sections of Act 23 amending Wis. Stat. §§ 6.02, .10(3), and .15 to increase the durational residency requirement from 10 days to 28 days violate the First and Fourteenth Amendments." Dkt. 234, at 116. With those provisions of Act 23 invalidated, Wis. Stat. §§ 6.02, .10(3), and .15 are as they were before Act 23 amended them to increase the durational residency requirement. Beginning with the November 2016 election, Wisconsin will have a 10-day durational residency requirement.

Fifth, defendants criticize the court's holding that the ban on using expired student IDs fails under rational basis review. Dkt. 241, at 6. Defendants' point, apparently, is that rational basis review is so minimally demanding that the court's decision must be wrong. But defendants had three (four, counting their motion to stay) opportunities to present a rational justification for the state's decision to exclude expired student ID cards from the list of acceptable IDs, and they failed to do so. Defendants argue that "it is plainly rational to require a person using a student ID to be a current student." *Id.* The court acknowledged this point in its order. Dkt. 234, at 114. But Wisconsin law *already* ensures that only current students vote because it requires a voter who uses a student ID at the polls to also provide proof of enrollment. Wis. Stat. § 5.02(6m)(f). Defendants have not explained why the additional measure of requiring that a student ID be *unexpired* provides any additional measure of security. Thus, the requirement is redundant and simply makes it more likely that an otherwise qualified voter will be unable to vote.

Sixth, defendants contend that the court misunderstood the current state of the IDPP. They argue that under the court's injunction, ineligible voters will have credentials that allow them to vote for several years, and the state will be powerless to stop them. The court is not persuaded. However, the court's decision to stay the injunction as it relates to the long-term reform of the IDPP, places the issue on the back burner for now.

Here is the problem. Under the emergency rule, a petitioner gets a receipt valid for 60 days. The petitioner automatically gets a renewed receipt, good for another 60 days, unless the DMV denies the petition in the meantime, which would happen if the DMV discovers that the petitioner has committed fraud or is ineligible for an ID. Apparently, a petitioner who cannot come up with the necessary documents will keep getting renewed receipts, in 60-

6

day increments.[2] But after 180 days, the game changes. At that point, the petitioner is required to provide "additional information" to keep the petition pending. "[I]f the applicant provides no additional information within the next 180 days the petition will be denied and no further identification card receipts will be issued[.]" PX453, § 8.

So where would this leave Mrs. Smith, the qualified elector who could not get a voter ID through the IDPP? *See* Dkt. 234, at 1-2. Under the emergency rule, her receipt would be subject to cancellation once 180 days pass without her providing some new information to the DMV. Instead of receiving the permanent voter ID to which she is entitled, Mrs. Smith would be required to sustain a back-and-forth exchange with the DMV indefinitely, even though she has already provided all the information that she has. This is a burden that far exceeds what *Crawford* and *Frank* contemplated. Although the state has given Mrs. Smith a receipt that will allow her to vote in November 2016, her right to vote in subsequent elections is very much in doubt. And there are about 100 petitioners who, like Mrs. Smith, are stuck in the IDPP. The state has no permanent solution for their conundrum. Defendants have not convinced the court that the IDPP is constitutionally sound.

But in the short term, the emergency rule blunts the constitutional injury to those who are stuck in the IDPP by giving them receipts valid for voting. As long as defendants inform the public about the IDPP—and the court will not stay that aspect of its injunction—this will take care of the problem until the November election. The court will leave it to the

---

[2] The testimony at trial was that renewals would issue automatically for 180 days. Tr. 6, at 13:5-14. But that is not entirely clear from the text of the rule itself. PX453, § 8. The text of the rule does not make clear exactly when a petitioner is on the 180-day clock to provide more information.

state to reform or replace the IDPP to meet the basic standards set out in the court's opinion, but that work can wait until the appeals in this case are resolved.

**B. Balance of harms**

Defendants have not demonstrated a strong likelihood of success on the merits. Accordingly, the balance of harms and the public interest would have to weigh strongly in their favor for the court to stay its permanent injunction pending appeal. *Cavel Int'l, Inc. v. Madigan*, 500 F.3d 544, 547 (7th Cir. 2007).

The court begins at a high level, with the harm that would befall plaintiffs and other voters if the court stayed its injunction. The enjoined provisions, regardless of the theory under which the court has invalidated them, have one thing in common: they impede Wisconsin citizens from voting. A stay would irreparably injure plaintiffs and the public by abridging voters' constitutional rights. *See Christian Legal Soc'y v. Walker*, 453 F.3d 853, 867 (7th Cir. 2006) ("[V]iolations of First Amendment rights are presumed to constitute irreparable injuries."); *Preston v. Thompson*, 589 F.2d 300, 303 n.3 (7th Cir. 1978) ("The existence of a continuing constitutional violation constitutes proof of an irreparable harm, and its remedy certainly would serve the public interest."). For the reasons explained in the court's opinion, none of the enjoined provisions meaningfully contribute to the public's interest in election integrity or efficiency.

The court turns now to the specific harms that defendants attribute to each aspect of the court's injunction.

The long-term reform of the IDPP will require affirmative effort by the state. Although it is not clear to the court how much effort will be required to reform the IDPP to remedy its constitutional flaws, the court will stay this aspect of its injunction (paragraphs

10.b. and 10.d. of the injunction order) until this appeal is resolved. The other two aspects of the injunction that relate to the IDPP are: the order that the DMV promptly issue credentials valid as a voting ID to petitioners who enter the IDPP (paragraph 10.a); and that the state inform the public that those who enter the IDPP will receive such credentials (paragraph 10.c). For the short-term, the state has already committed to paragraph 10.a by providing receipts to those with pending petitions. The defendants have not asserted that complying with paragraph 10.c would be unduly burdensome. Thus, the court will not stay the order that the state make reasonable efforts to educate the public about IDPP receipts.

The injunction against enforcing the one-location rule and the limits on the times for in-person absentee voting imposes no direct burden or hardship on the state or on any municipality. It will be up to the election authority in each municipality to decide if more than one location should be set up to take in-person absentee votes. If an additional location serves no useful purpose, or would pose intractable logistical problems, then the municipality can stick with one location. But if a municipality, say Milwaukee, decides that additional locations would be feasible and helpful to its citizens, then that municipality can undertake the effort. The same principle applies to the hours for in-person absentee voting: no municipality has to offer any more hours than its election authority deems appropriate.

Defendants contend that the court's injunction would lead to confusion if municipal clerks opened the time for in-person absentee voting before the ballots are ready. Defendants point to no evidence that any municipal clerk wanted to open in-person absentee voting before the ballots were ready. At trial, municipal clerks uniformly testified that the availability of the ballots poses a logically necessary first moment when in-person absentee voting is possible. Tr. 7a, at 113:25-114:15. Defendants' argument that the injunction

9

creates confusing disparities between municipalities rings hollow because the state already allows enormous disparities between communities. For example, the clerk's office of the Town of Port Washington has office hours only two days a week, whereas the clerk's office for the City of Port Washington is open every weekday during business hours. *Id.* at 160:21-25, 177:4-8. The hours for in-person absentee voting will vary greatly from town to town, regardless of the court's injunction. Defendants' contention that the injunction harms the legislature's attempt to create a "cohesive statewide election system" is not remotely credible.

Defendants have almost nothing to say about any harm from the court's injunction against the extended durational residency requirement. At trial, defendants adduced no evidence at all of any fraud or impropriety that resulted from the shorter 10-day requirement, and they do not now point out any threat to election integrity if the 28-day requirement is enjoined. Defendants merely pose the question: what should an election administrator do with a voter who registered while the 28-day rule was enjoined, if the court's ruling is later reversed? But posing this question does not demonstrate any harm. There are undoubtedly vast numbers of current voters who registered under the 10-day rule before the passage of 2011 Wis. Act. 23. Those voters do not pose any current problem by remaining on the rolls; neither would a few voters newly registered under a 10-day rule. Balanced against the acute burden imposed on a recently moved person who is forced to return to his or her old district to register and vote, this alleged harm is inconsequential.

Defendants contend that faxing and emailing absentee ballots takes work, introduces the possibility of error, and makes the ballot less private. The court addressed these issues in its consideration of the merits of plaintiffs' challenge to these restrictions, and it held that these concerns did not justify the acute burdens imposed on voters who could not get

absentee ballots in time by regular mail. Defendants add nothing new in their request for a stay of the court's injunction. Given that municipal clerks are already required to deliver absentee ballots for military and permanently overseas voters, the court concludes that distributing some additional fax and email ballots does not impose a significant hardship on the state or municipal clerks.

The court finds it hard to see how the relatively minor changes to student voting requirements pose any burden or harm to anyone. Defendants do not address the injunction against enforcing the requirement that "dorm lists" must include citizenship information if they are to be used as proof of residence. The court considers it conceded then that this part of the injunction poses no meaningful hardship. As for the injunction against the provision that requires student IDs used for voting to be unexpired, defendants say only that absent a stay, universities may not make arrangements to issue compliant IDs. Dkt. 241, at 7. That is pure speculation. Wisconsin law requires that a student ID for voting have an expiration period of two years. The standard ID cards at many universities do not comply with this requirement, and so those schools will have to issue compliant IDs regardless of whether poll workers are allowed to accept expired IDs. It is hard to image that this slight adjustment could not be easily integrated into the instructions for poll workers.

One more point in closing. Defendants assert that voting rights cases typically involve a "dizzying back-and-forth between election laws being enjoined and reinstated." *Id.* at 9. Case in point: the Seventh Circuit recently stayed a preliminary injunction that the Eastern District of Wisconsin entered requiring the state to adopt an affidavit procedure for voters who did not present IDs at the polls. *Frank v. Walker*, No. 16-3003 (7th Cir. Aug. 10, 2015) (order staying injunction pending appeal). If this most recent decision in *Frank* had any

11

bearing on this case, the court would consider it carefully. But it relates solely to the affidavit procedure that Judge Adelman imposed as a remedy. This court declined to impose that remedy, choosing instead an injunction closely tied to the specific constitutional problems in Wisconsin's election regime. The tightly drawn injunction should reduce the likelihood of a back-and-forth with the court of appeals.

But the court cannot avoid the potential back-and-forth simply by finding for defendants. Plaintiffs have appealed the court's decision as well, and if they win, the court's injunction will have to be reworked to make it more favorable to them. For now, this court has found for plaintiffs on some of their claims, and it has identified several ways in which Wisconsin's election regime violates the constitutional rights of it citizens. Both sides have the right to appeal this decision to the court of appeals. But while these appeals proceed, the court will not let the constitutional violations it has found endure.

ORDER

IT IS ORDERED that defendants' motion to stay the court's permanent injunction pending appeal, Dkt. 241, is DENIED in substantial part. As explained above, only the provisions of the injunction requiring the state to reform its IDPP within 30 days of the date of the court's opinion on the merits are STAYED pending the outcome of the parties' appeals. The rest of the injunction remains in effect.

Entered August 11, 2016.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge