IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ONE WISCONSIN INSTITUTE, INC.,
CITIZEN ACTION OF WISCONSIN EDUCATION
FUND, INC., RENEE M. GAGNER,
ANITA JOHNSON, CODY R. NELSON,
JENNIFER S. TASSE, SCOTT T. TRINDL,
MICHAEL R. WILDER, JOHNNY M. RANDLE,
DAVID WALKER, DAVID APONTE, and
CASSANDRA M. SILAS,

            Plaintiffs,

  v.

MARK L. THOMSEN, ANN S. JACOBS,
BEVERLY R. GILL, JULIE M. GLANCEY,
STEVE KING, DON M. MILLS,
MICHAEL HAAS, MARK GOTTLIEB, and
KRISTINA BOARDMAN,
*all in their official capacities*,

            Defendants.

OPINION & ORDER

15-cv-324-jdp

---

Plaintiffs contend that defendants have not complied with the court's final order as it relates to the ID Petition Process (IDPP), and they ask the court to impose appropriate remedies. Based on the parties' written submissions, and a full-day hearing, the court finds that defendants have not complied with the court's order concerning the IDPP, because the public has not been adequately informed about the IDPP and DMV staff had not been adequately trained to administer it. The court will order remedies targeted to these problems.

BACKGROUND

After trial, the court held that Wisconsin's ID Petition Process is unconstitutional and must be reformed, and the court issued an injunction requiring that reform. Dkt. 234.

Defendants requested a stay of the injunction pending appeal, which the court granted only in part. The court stayed the part of the order requiring comprehensive reform of the IDPP until after the appeal, because in the short term the most egregious deficiencies of the IDPP were ameliorated by an emergency rule issued just prior to trial in this case. The court's order, issued July 29, 2016, required the state to honor its commitment to the emergency rule and also to take some additional steps ensure that the IDPP would serve its purpose. Specifically, the court ordered defendants to:

> a. Promptly issue a credential valid as a voting ID to any person who enters the IDPP or who has a petition pending;
>
> b. Provide that any such credential has a term of expiration equivalent to that of a Wisconsin driver license or photo ID and will not be cancelled without cause;
>
> c. Inform the general public that credentials valid for voting will be issued to persons who enter the IDPP[.]

*Id.* at 118-19.

Both parties have appealed the court's order to the Seventh Circuit, and the appeal remains pending. In addition, plaintiffs sought immediate en banc review, and defendants sought a stay of the court's injunction. In large part, this matter is now within the jurisdiction of the appellate court, but this court has not been entirely divested of jurisdiction. In the order denying the request for en banc review and a stay of the injunction, the Seventh Circuit made clear that it expected this court to enforce its injunction through the November election. The court quotes the pertinent paragraph in full, because that paragraph informs the court's understanding of the scope of its authority, and of the importance of enforcing its injunction:

2

> Given the State's representation that "initiation" of the IDPP means only that the voter must show up at a DMV with as much as he or she has, and that the State will not refuse to recognize the "initiation" of the process because a birth certificate, proof of citizenship, Social Security card, or other particular document is missing, we conclude that the urgency needed to justify an initial en banc hearing has not been shown. Our conclusion depends also on the State's compliance with the district court's second criterion, namely, that the State adequately inform the general public that those who enter the IDPP will promptly receive a credential for voting, unless it is plain that they are not qualified. The Western District has the authority to monitor compliance with its injunction, and we trust that it will do so conscientiously between now and the November 2016 election.

*Frank v. Walker*, No. 16-3003, 2016 WL 4524468, at *2 (7th Cir. Aug. 29, 2016). In other words, the Seventh Circuit forestalled immediate intervention in reliance on both the state's representations about the effectiveness of the IDPP and this court's enforcement of the injunction concerning public education about the IDPP.

FINDINGS OF FACT

The court finds that defendants have not complied with the court's injunction in the following ways.

On September 22, 2016, defendants submitted a report to the court indicating that the IDPP was working as required and that they had adequately informed the public about it.

VoteRiders is an organization that educates voters about voter ID requirements and helps individual voters acquire voting credentials. Between September 16 and September 28, 2016, Molly McGrath, a VoteRiders employee, and her mother, Susan McGrath, recorded several interactions in which DMV employees were asked about how electors could get a voting credential if they lacked the documentation needed for a traditional Wisconsin ID.

The DMV personnel failed to inform the McGraths or the voters that Molly was assisting at the time that a credential valid as a voting ID would be promptly provided to any person who enters the IDPP. The information provided by DMV employees varied greatly; some DMV employees indicated that a voter who entered the IDPP would not necessarily have a voting credential for the November election. The DMV employees were at all time courteous, and there is no evidence that any of them intentionally mislead any prospective voter. At the hearing, Kristina Boardman, administrator of the DMV, conceded that DMV personnel gave incomplete and inaccurate information about the IDPP.

DMV employees who handled requests for IDs were not adequately trained on IDPP procedures. On May 12, May 16, September 6, and September 23, 2016, DMV employees received technical training bulletins, essentially a few pages of written instructions, which they were expected to read. In DMV offices open five days a week, the technical training bulletin received on a particular day was supposed to be discussed in a 20-30 minute staff meeting. Employees of smaller DMV offices were expected to call if they had questions. There was no procedure to ensure that DMV employees read or understood the technical training bulletins.

News reports of the McGraths' investigation prompted Boardman to initiate retraining on the IDPP. An online training module was distributed to all DMV employees. The module contained accurate information about the IDPP and required DMV employees to correctly answer questions about the IDPP. At the time of the October 12, 2016, hearing, 98 percent of DMV employees had completed the training module. The DMV also changed IDPP intake procedures. In five-day offices, ID applicants are now handled by an employee who specializes in IDPP processing. In 20-hour offices, where IDPP specialists are not

4

available, DMV employees processing an IDPP application do so with a specialist from the DMV employee hotline on the phone. The retraining and process improvements substantially reduce the likelihood that DMV employees will give incorrect information about the IDPP.

The DMV and the WEC have done little to inform the general public that credentials valid for voting will be issued to persons who enter the IDPP. The WEC's public education and outreach efforts since the court's July 29 order have largely been a continuation of the planned campaign concerning voter ID in general. The DMV's efforts have consisted primarily of press releases which indicate the existence of the IDPP as a means of acquiring a Wisconsin ID. Neither the DMV nor the WEC have undertaken significant efforts to inform the public that those who enter the IDPP will promptly get a receipt valid for voting even if the applicant does not promptly receive a regular Wisconsin ID.

Neither the DMV nor the WEC have clearly explained to the public what it takes to initiate an ID petition. The DMV's materials, as of the date of the hearing, are not clear because they make it appear that an applicant must have some undefined set of documents. In fact, as established at the hearing, one does not need any documents to initiate the IDPP. The IDPP is initiated if one goes to a DMV office, has a photo taken, and completes two forms: the MV3004 application for a Wisconsin ID, and the MV3012 application for the ID Petition Process itself. If an applicant has not already been issued a Wisconsin driver's license or ID, then the applicant will receive a receipt valid as a voting ID by mail within six days. In the week before the election, the receipts will be sent by overnight mail. The requirements for initiation are admirably simple, but they have not been clearly communicated to the public.

DISCUSSION

As the court explained during the October 12 and 13 hearings, the court does not believe that it has the authority to suspend Wisconsin's voter ID law for the November election. While this case is on appeal, the court's authority is limited to enforcing the current injunction, not entering a new one. Even if the court did have the authority to reverse course at this point, the court would not do so for several reasons. Voting is already underway, and for reasons explained in the court's July 29 order, Dkt. 234, the court intends to respect Wisconsin's decision to implement a strict voter ID law. But most important, the problems with the IDPP are amenable to a targeted solution: better training of DMV employees and better communication to the public.

To be clear yet again: the IDPP is deeply flawed, and the emergency rule that provides the receipts valid for voting is not a perfect solution. But with better training and public communication, the IDPP and the emergency rule will provide reasonable assurance that those without an acceptable voting ID can get one without undue burden (under current constitutional standards).

As discussed at the hearing, the court-ordered improvements will come in two phases. First, the area in need of immediate reform: the information voters are receiving from the DMV about the IDPP. By 12:00 p.m. tomorrow, October 14, 2016, the parties will file: (1) a proposed one-page information sheet or "palm card" that clearly and succinctly explains how a voter enters the IDPP and what the voter can expect after initiating the process; (2) a proposed takeaway letter that applicants will receive immediately after entering the IDPP that explains when they should expect their receipt valid for voting and that shows what the receipt will look like; (3) a revised page on the DMV website that explains the IDPP. The

court intends to approve the forms of these documents and plans on October 14, so that the state may implement them on Monday, October 17, 2016. That implementation will include distributing the revised documents (or links to them as appropriate) to the DMV contact list and the WEC municipal clerk distribution list.

Phase two will require the parties to propose additional reforms next week. The court expects the parties to propose quality assurance measures, including follow-up training and competency checks for DMV employees and "secret shopper" efforts similar to those that the state has already employed with the help of undercover state troopers; revisions to the checklist to assist DMV employees as they guide customers to and through the IDPP; and a public information campaign.

The parties will submit their joint phase two proposal (noting where the parties diverge in their recommendations) by Friday, October 21, 2016. The state will also file status reports with the court on October 21; October 28; November 4; and November 11. The court will be particularly interested in hearing about the state's quality assurance and outreach efforts.

Also, beginning immediately, the IDPP receipts valid for voting will expire 180 days—as opposed to 60 days—after issuance.

ORDER

IT IS ORDERED that:

1. Plaintiffs' motion for relief relating to the voter ID law, Dkt. 262, is GRANTED in part and DENIED in part. The court will not enjoin enforcement of Wisconsin's voter ID law, but, as set forth here, the court will direct the state to continue to reform the IDPP between now and the November election.

2. By 12:00 p.m. on October 14, 2016, the parties will file: (1) a proposed one-page information sheet or "palm card" that clearly and succinctly explains how a voter enters the IDPP and what the voter can expect after initiating the process; (2) a proposed takeaway letter that applicants will receive immediately after entering the IDPP that explains when they should expect their receipt valid for voting and that shows what the receipt will look like; (3) a revised page on the DMV website that explains the IDPP. The court intends to approve the forms of these documents and plans on October 14, so that the state may implement them on Monday, October 17, 2016.

3. The parties will file their joint phase two proposal by Friday, October 21, 2016.

4. The state will file weekly status reports with the court on October 21; October 28; November 4; and November 11.

5. Beginning immediately, the IDPP receipts valid for voting will expire 180 days—as opposed to 60 days—after issuance.

Entered October 13, 2016.

                        BY THE COURT:

                        /s/

                        _____
                        JAMES D. PETERSON
                        District Judge