**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| ONE WISCONSIN INSTITUTE, INC., *et al.* <br><br> Plaintiffs, <br><br> v. <br><br> MARK L. THOMSEN, *et al.* <br><br> Defendants. | Case No. 3:15-cv-324 |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO ENFORCE THE INJUNCTION AND MAINTAIN THE STATUS QUO**

Plaintiffs, by their undersigned counsel, respectfully move this Court for an order enforcing the Court's July 29, 2016 injunction (Dkt. 234) and October 13, 2016 Order on Motion for Relief (Dkt. 293) against the members and administrator of the Wisconsin Elections Commission, the secretary of the Wisconsin Department of Transportation, and the administrator of the DMV, by prohibiting Defendants from implementing Sections 1, 1K, and 92 of SB 884 (2017) (collectively, "challenged provisions").[1] SB 884—including the challenged provisions—was passed by the Wisconsin State Legislature on December 5, 2018, as part of an extraordinary lame-duck session held just days after Wisconsin Republicans suffered multiple losses in statewide races for office as part of a partisan attempt to retain and regain power. The bill was signed into law by outgoing-Governor Walker on December 14, 2018, and the challenged provisions are in direct violation of this Court's aforementioned injunction and order.

---

[1] SB 884 was enacted as 2017 Wisconsin Act 369 on December 14, 2018, but is referred to herein as SB 884.

1

Section 1K creates state-imposed time limits on in-person absentee voting ("early voting"), limiting early voting to fourteen days, which this Court found unconstitutional as well as a violation of the Voting Rights Act and enjoined on July 29, 2016. *One Wisconsin Inst., Inc. v. Thomsen*, 198 F. Supp. 3d 896, 931- 35, 956, 960-61 (W.D. Wis. 2016). Section 92—without making *any* substantive changes to the ID petition process ("IDPP")—codifies into statute the faulty IDPP that this Court found unconstitutional and in need of reform or replacement. *Id*. at 904-05. Further, in direct violation of this Court's order, it reduces the effective time-period for receipts valid for voting—a failsafe that this Court found crucial to prevent disenfranchisement while its injunction was on appeal—from 180 days to sixty days. Oct. 13, 2016 Opinion and Order, at 7-8 (Dkt. 293) (hereinafter, "October 2016 Order"). Finally, Section 1 preserves the requirement that university and college IDs must be unexpired, a requirement that this Court found unconstitutional and enjoined on July 29, 2016. *See One Wisconsin*, 198 F. Supp. 3d at 962.

Accordingly, Plaintiffs seek an order from this Court enforcing its injunction by prohibiting Defendants from implementing Sections 1K and 92 of SB 884 and clarifying that its ruling on expiration dates also applies to Section 1 of SB 884. The next general election in Wisconsin is scheduled to take place on April 2, 2019. As such, Plaintiffs seek resolution of this issue well before that date to permit municipalities that opt to provide early voting for a longer period than permitted by SB 884 to do so, as set out in their accompanying Motion. In support, Plaintiffs state as follows.

## FACTS

In the 2018 General Election, Wisconsin voters made their desire for a change in leadership clear. From governor to treasurer, all six of the statewide races for office were won by Democrats, with at least four of these—governor, lieutenant governor, attorney general, and

2

treasurer—flipping parties for the first time in several years. Voters made their voices heard, not only on election day, but also in the days leading up to the election through in-person and mail-in absentee voting. Indeed, in 2018—as a direct result of the 2016 injunction issued by this Court—over 565,000 individuals voted early, a record number of early voters in a midterm election in Wisconsin. *Compare* Ex. A (Nov. 6, 2018 General Election Absentee Ballot Rpt.) to Decl. of B. Spiva, *with* Ex. B (General Election Voter Registration and Absentee Statistics 1984-2016).[2] And this number rivals the over 819,300 voters who voted early in the 2016 General Election because of this Court's injunction. Ex. B (General Election Voter Registration and Absentee Statistics 1984-2016). Likewise, the total number of voters who cast their votes in the 2018 General Election is also reflective of those who entered the IDPP and were able to vote because they obtained a temporary receipt for voting.

Nevertheless, a mere eight days after this historic election, Republican Speaker of Wisconsin's General Assembly Robin Vos—a sponsor of Act 23 (which imposed Wisconsin's voter ID requirement and shortened the early voting period) and the same speaker in power at the time that Act 146 (which further shortened the early voting period by eliminating weekends and limiting hours) was passed—began taking actions not only to undermine the power of the incoming statewide leaders, but also to ensure that it is harder for Democratic candidates to win future elections by restricting early voting, codifying the unconstitutional IDPP into statutory law, while simultaneously reducing the effective period for receipts, and reinstituting the requirement for expiration dates on university and college IDs. These actions are in direct contravention to this Court's injunction and October 2016 Order in this case.

---

[2] All citations to exhibits herein are citations to the supporting Attorney Declaration of Bruce V. Spiva.

Specifically, on November 14, 2018, Speaker Vos emailed Joseph Kreye and Michael Gallagher, the legal services manager and a senior legislative attorney for the Wisconsin Legislative Reference Bureau, respectively, requesting that the period for early voting be modified from the status quo—under which local municipalities have the discretion to determine their own days and times for absentee voting, as ordered by this Court—to establish a state-imposed early voting timeframe to "begin[] no sooner than two weeks before election day." Ex. C at 2-3 (November 14, 2018, 2017 Drafting Request). After analysis, Mr. Kreye informed Speaker Vos's Legal and Policy Advisor, Steve Fawcett, that this Court had held that "the state-imposed limits on the time for in-person absentee voting, with the exception of the prohibition applicable to the Monday before election day, are unconstitutional." *Id.* And that, "by way of court order," the limitations on early voting were "currently unenforceable." *Id.* Nevertheless, blatantly flouting this Court's Order, Speaker Vos's office persisted with the proposed change, *see id.* ("Can you make it [the] 3rd Saturday so there is a 14 day window? If not, I guess that 15 days isn't much different than 14."), eventually folding it into SB 884, an omnibus bill introduced on December 3, 2018 during the extraordinary lame-duck session of the Wisconsin State Legislature, via Senate Amendment 1. *See* Ex. D at 1-2, 12-13 (Legislative History). The amendment passed committee by a party-line vote of 12 to 4 on December 4, 2018. *Id.* at 1; *see also* Ex. E at 971(Senate Amendment 1 and SB 884 Senate Votes). It then moved to the Senate Floor where it was eventually passed—without any substantive debate—by another near party-line vote of 17 to 16 in the early hours of the morning.[3] Ex. E at 985-86 (Senate Amendment 1 and SB 884 Senate Votes); *see also* Ex. F (Dec. 5, 2018 *Capital Times* news article regarding lame-duck session).

---

[3] One Republican Senator voted against the bill.

4

The General Assembly began debate on the amended bill almost immediately thereafter.[4] Ex. D at 1-2 (Legislative History); Ex. F (Dec. 5, 2018 *Capital Times* news article regarding lame-duck session). At multiple points during the debate, Assembly members reminded Speaker Vos and their colleagues—just as they had when the bill was first introduced in the Joint Committee on Finance—that this Court had already enjoined state-imposed limitations on early voting, and that SB 884 flew directly in the face of that injunction. *See* Dec. 3, 2018 Joint Comm. on Finance - Part 1, Wisconsin Eye, http://www.wiseye.org/Video-Archive/Event-Detail/evhdid/12961, at 2:26:06 ("We have a court order. We have an injunction striking down very similar procedures saying you cannot limit [early voting] - that this is motivated by partisanship. . . . You want to go ahead and violate a court order. You're going to be in contempt."); *id.* at 2:29:05 ("It's still in the courts and this is being written into law again. This is virtually the same language that is already in law that has already been stopped or enjoined by a court."); *id.* at 2:36:11 - 2:38 (Sen. Erpenbach discussing *One Wisconsin* case). For example, Rep. Chris Taylor stated that the legislature was "again restricting early voting," asking "Mr. Speaker" if he knew that "a court already struck down a very similar provision. You have no respect for the separation of powers. You're going to be in contempt of court most likely because you have no respect for the fact that your restrictions on early voting have already been struck down." *See* Dec. 4, 2018 Assembly Floor Session - Part 2, Wisconsin Eye, http://www.wiseye.org/Video-Archive/Event-Detail/evhdid/12963, at 2:21:03. Likewise, another member stated: "We've already seen and heard from judges who've invalidated your attacks on early voting—you guys want to go back to two weeks." *Id.* at 3:10. And still others reminded the Speaker that places like Milwaukee need early voting to combat obstacles faced by

---

[4] The companion Assembly Bill to SB 884 is Assembly Bill 1070. From the legislative history, it does not appear that any substantive votes took place on Assembly Bill 1070. Rather, votes were recorded for SB 884 and debate proceeded on SB 884.

voters, and that the answer to complaints by small municipalities about early voting in Milwaukee are not more restrictions, but more resources for such municipalities, *id.* at 1:40:16, which is precisely what this Court found when it issued its injunction. *See One Wisconsin Inst., Inc.*, 198 F. Supp. 3d at 924 ("[R]ather than achieving uniformity, the provisions governing the hours for in-person absentee voting preserved great disparities from town-to-town."); *id.* at 934 ("Wisconsin's approach in this instance was backward: rather than *expanding* in-person absentee voting in smaller municipalities, the state *limited* in-person absentee voting in larger municipalities. By doing so, the state has imposed moderate burdens on the residents of those larger municipalities."). Speaker Vos and other Republican members said nothing in defense of these restrictions on the floor, but publicly stated that the changes in early voting are "needed to promote fairness across the state and make early voting standard across all municipalities," precisely the justifications that this Court struck down in its decision, which Rep. Vos and his supporters were well aware of.[5] Ex. M (Dec. 5, 2018 *Capital Times* news article regarding early voting). At approximately 8:30 a.m., just hours after the bill was sent to the General Assembly, it passed by a vote of 57 to 26 almost entirely along party lines.[6] Ex. D at 1-2 (Legislative History); *see also* Ex. F (Dec. 5, 2018 *Capital Times* news article regarding lame-duck session).

At the same time Speaker Vos began seeking changes to the early voting laws, he also sought to codify the IDPP—which this Court found unconstitutional and in need of repeal or reform—into law. The codification of the IDPP included a 60-day period for temporary receipts,

---

[5] Neither Speaker Vos nor the Senate leadership appeared in the Joint Committee on Finance either; however, one member of the Committee, Rep. John Nygren, stated in the discussion over the early voting restrictions that "it's a fairness issue" "why should Milwaukee have all this time to early vote?" Dec. 3, 2018 Joint Comm. on Finance - Part 1, Wisconsin Eye, http://www.wiseye.org/Video-Archive/Event-Detail/evhdid/12961, at 2:34:22 - 2:36.
[6] One Republican Representative voted against the bill.

which is in direct contravention of this Court's October 2016 Order that such receipts be valid for 180 days. This Court made clear that the 180-day temporary receipts were critical to preventing voters from being disenfranchised while the State made more fundamental reforms to the broken IDPP. Sept. 30, 2016 Order regarding IDPP, at 1 (Dkt. 261) ("hereinafter "IDPP Order"). Indeed, on November 26, 2018, Speaker Vos again contacted the Wisconsin Legislative Reference Bureau to "codify[] administrative code provisions related to voter identification," into statute. Ex. G at 1-3, 16 (November 26, 2018, 2017 Drafting Request). This codification was included in the original version of SB 884, which, upon its introduction to the Senate, was met with overwhelming opposition. Over 1,400 people traveled to the Capitol to oppose the bill. *See* Dec. 4, 2018 Assembly Floor Session - Part 2, Wisconsin Eye, http://www.wiseye.org/Video-Archive/Event-Detail/evhdid/12963, at 2:12 - 2:15; *see also* Ex. D at 118-155 (Legislative History). The codified version of the IDPP contained in SB 884 is identical to the underlying administrative provisions that this Court ordered to be reformed or replaced in July 2016, with the sole exception being the effective period for temporary receipts, which was changed to 60 days rather than the 180 days this Court ordered. *See* Ex. D at 38-42 (Legislative History) (discussing Sections 90 - 95, which codify IDPP; the receipts provision is codified at Section 92). Contrary to this Court's orders, no reforms were made to the IDPP, and this is despite Speaker Vos's statement to the General Assembly that SB 884 "codifies the voter ID laws that were put into effect in regard to a court order." [7] Dec. 4, 2018 Assembly Floor Session - Part 2, Wisconsin Eye, http://www.wiseye.org/Video-Archive/Event-Detail/evhdid/12963, at 2:07:29.

---

[7] This Court "stay[ed] the requirement that the state fundamentally reform the IDPP" on August 11, 2016, pending the outcome of the appeal. Aug. 11, 2016 Order on Motion to Stay, at 2 (Dkt. 255). Accordingly, Plaintiffs do not specifically seek enforcement of this portion of the injunction at this time but note that codification of a process that has been found unconstitutional and in need of "fundamental[] reform" flouts this Court's findings and injunction. Moreover, this Court found

7

Finally, in addition to the changes described above, SB 884 also includes a change to the voter ID provision governing student IDs, adding technical colleges to the list of accepted university or college student IDs for voting purposes, but again providing—contrary to this Court's injunction—that all student IDs "contain[] an expiration date indicating that the card expires no later than 2 years after the date of issuance." *See* Ex. D at 26 (Legislative History). This requirement included in Section 1 of SB 884 was enjoined by this Court in its July 29, 2016 injunction, and should not be applied to any student IDs (including the technical college student IDs added by SB 884). *One Wisconsin Inst., Inc.*, 198 F. Supp. 3d at 962 ("The only thing that will change is that the ID card that a college or university student actually presents at the polls can be expired.").

As noted, SB 884 passed on December 4, 2018 and was signed by outgoing-Governor Walker on December 14, 2018. The legislative record contains only limited justifications for these changes: the statement made by Speaker Vos regarding the codification of voter ID laws, the statement regarding fairness made by Rep. John Nygren (R) in the Joint Committee on Finance, and the public statements made outside of chambers noted above. Governor Walker echoed Speaker Vos's public justification for early voting in his signing of SB 884, claiming that "fairness" justified the early voting restrictions even though this Court has already found that such restrictions do not achieve that purpose. Ex. N (Dec. 15, 2018 Madison.com article regarding signing of lame-duck bills) ("I like early voting," Walker said. "I just like it to be fair.").

---

it critical to the constitutional enforcement of the ID law pending fundamental reform of the IDPP that Defendants provide 180-day temporary receipts to all individuals who enter the IDPP with whatever documentation they have. Plaintiffs' present motion to enforce this Court's IDPP rulings is limited to Section 92 and the reduction of the temporary receipt period from 180 days to 60 days.

8

**ARGUMENT**

**I. The Challenged Provisions of SB 884 Violate This Court's Injunction**

Once a district court issues an injunction, it retains broad authority to enforce that injunction during the pendency of an appeal. *See, e.g.*, *N.L.R.B. v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 588 (6th Cir. 1987) (finding that although a district court may not alter or enlarge the scope of its judgment pending appeal, it retains jurisdiction to enforce the judgment (citing *Deering Milliken v. FTC*, 647 F.2d 1124, 1128-29 (D.C. Cir. 1978)); *Nicol v. Gulf Fleet Supply Vessels, Inc.*, 743 F.2d 298, 299 n. 2 (5th Cir.1984) ("[T]he district court has jurisdiction to act to enforce its judgment so long as the judgment has not been stayed or superseded."); *Wedbush, Noble, Cooke, Inc. v. SEC*, 714 F.2d 923, 924 (9th Cir.1983) ("[T]he mere pendency of an appeal does not, in itself, disturb the finality of a judgment."). Indeed, "[u]nless a stay is granted either by the court rendering the judgment or by the court to which the appeal is taken, the judgment remains operative." *Deering Milliken, Inc.*, 647 F.2d at 1128-29. This principle was recognized by this Court in its July 29, 2016 and October 2016 Orders as well as by the Seventh Circuit in its August 29, 2016 Order on Petitions for Initial Hearing En Banc. *One Wisconsin Inst., Inc.*, 198 F. Supp. 3d at 965 ("The court retains jurisdiction to oversee compliance with the injunction."); *see also* October 2016 Order at 3 ("'The Western District has the authority to monitor compliance with its injunction, and we trust that it will do so conscientiously between now and the November 2016 election.'") (quoting *Frank v. Walker*, No. 16-3003, 2016 WL 4524468, at *2 (7th Cir. Aug. 29, 2016)). And it is particularly true, and even more important, in the context of an injunction like the one at issue, that protects voters from constitutional and statutory violations of their fundamental right to vote.

SB 884's state-imposed limits on early voting and codification of IDPP with a 60-day effective period for receipts blatantly contravene this Court's injunction and October 13, 2016 Order. They seek to accomplish precisely the behavior this Court barred the State and Defendants from engaging in through Acts 23, 146 and CR 16-040 and 14-061: unconstitutionally burdening the ability of Wisconsin citizens to vote. Moreover, SB 884 includes the requirement that expiration dates be visible on university and college IDs (as well as its application of it to technical school IDs) used for voting that this Court struck down in further violation of the injunction. To preserve the status quo, and to ensure that Wisconsin voters remain free from unconstitutional burdens, this Court should prohibit Defendants from enforcing Sections 1, 1K, and 92 of SB 884 and require that these provisions be implemented only as consistent with this Court's injunction.

### A. Early Vote Restrictions

SB 884 provides that applications for early voting "shall be made no earlier than 14 days preceding the election and no later than the Sunday preceding the election." Ex. D at 28 (Legislative History, SB 884, Sect. 1K). Under current law, which results directly from the Court's injunction in this case, the only constitutional state-imposed limitation on early voting is the limitation placed on early voting on the Monday preceding the election. *One Wisconsin Inst., Inc.*, 198 F. Supp. 3d at 964; *see also* Ex. C at 2-3 (November 14, 2018, 2017 Drafting Request) (discussing this Court's injunction as current law). All other "state-imposed limits on the time for in-person absentee voting . . . are unconstitutional." *One Wisconsin Inst., Inc.*, 198 F. Supp. 3d at 964. Thus, there is no question that Section 1K of SB 884 directly contravenes this Court's injunction and disrupts the status quo.

Indeed, since the Court issued its injunction, municipalities across the state have exercised their discretion to meet the needs of their residents by providing early voting opportunities well

beyond the state-imposed limits enjoined by this Court. For example, in the 2018 General Election, as a direct result of this Court's injunction, Milwaukee allowed early voting to take place for approximately thirty-four days beginning on September 24, 2018, nearly 44 days prior to the election. Ex. H (2018 Milwaukee Early Voting Schedule). Approximately 93,581 people in Milwaukee voted during that time, with at least 21,973 of those voters voting prior to SB 884's state-imposed timeframe.[8] *Compare* Ex. A (Nov. 6, 2018 General Election Absentee Ballot Rpt.), *with* Ex. I (Oct. 22, 2018 General Election Absentee Ballot Rpt.). Similarly, for the 2016 General Election, Milwaukee provided twenty days of early voting, with the early voting period beginning on October 17, 2016, twenty-three days prior to the election. Ex. J (2016 Milwaukee Early Voting Schedule). Madison has also provided for extensive early voting since this Court's injunction issued. In 2018, Madison provided thirty-three days of early voting, beginning on September 20 and ending on November 3, 2018. Ex. K (2018 Madison Early Voting Schedule). Over 87,318 people in Madison voted during that time, with at least 21,877 of those voters voting prior to SB 884's state-imposed timeframe.[9] *Compare* Ex. A (Nov. 6, 2018 General Election Absentee Ballot Rpt.), *with* Ex. I (Oct. 22, 2018 General Election Absentee Ballot Rpt.). Likewise, in 2016 Madison provided thirty-eight days of early voting, with early voting beginning on September 26, 2016. Ex. L (Oct. 10, 2016 NBC article regarding early voting in Madison).

In contrast, if SB 884 had been in effect prior to the 2018 General Election, the earliest early voting could have begun in either municipality would have been October 23, 2016. Assuming

---

[8] These are the total figures for Milwaukee County, in which Milwaukee is located. Thus, some of these voters would have been voters in other municipalities in Milwaukee County. Nevertheless, Milwaukee is the largest city in Milwaukee County and likely accounted for the bulk of these voters.
[9] These are the total figures for Dane County, in which Madison is located. Thus, some of these voters would have been voters in other municipalities in Dane County. Nevertheless, Madison is the largest city in Dane County and likely accounted for the bulk of these voters.

that both localities would have held early voting on every available day during that time period, the total number of days for early voting would have been thirteen. This limitation is virtually identical to the twelve and ten-day periods before this Court in 2016, which this Court found unconstitutional.[10] *One Wisconsin Inst., Inc.*, 198 F. Supp. 3d at 964. Moreover, as a practical matter, that time period potentially excludes over 43,850 voters in those municipalities alone from casting their ballots. Thus, it is plain that Section 1K of SB 884 would drastically alter the status quo created by this Court's injunction and roll back its holding by imposing an unconstitutional restriction on early voting on Wisconsin voters.

There is no difference between the state-imposed limit set by Section 1K of SB 884 and the state-imposed limits set forth in Acts 23 and 146. Not only are the allotted time periods for the early voting restrictions virtually identical, as demonstrated above, but the State, to the extent it provides any justification at all, continues to justify SB 884's restrictions on the grounds of uniformity—a justification that this Court roundly rejected in its injunction. Indeed, the imposition of the state-imposed limits in SB 884 does not achieve uniformity across Wisconsin, rather it "preserve[s] great disparities from town-to-town." *Id.* at 924. As this Court explained, "Wisconsin's approach in this instance [i]s backward: rather than *expanding* in-person absentee voting in smaller municipalities, the state *limited* in-person absentee voting in larger municipalities. By doing so, the state has imposed moderate burdens on the residents of those larger municipalities." *Id.* at 934. And it continues to do so, in direct violation of this Court's injunction, here. *See* Ex. M (Dec. 5, 2018 *Capital Times* news article regarding early voting); Ex. O (December 5, 2018 *Milwaukee Journal Sentinel* news article regarding early voting).

---

[10] Act 23 specifically provided for twelve days for early voting and Act 146 cut that period down to ten total days. *One Wisconsin Inst., Inc.*, 198 F. Supp. 3d at 906, 931.

Moreover, the same partisan and racial motivations underlying the previous state-imposed early voting limitations—motivations that this Court found to be unconstitutional and intentionally discriminatory—visibly drove the passage of SB 884. *One Wisconsin Inst., Inc.*, 198 F. Supp. 3d at 934 ("stifling votes for partisan gain is not a valid interest."). In fact, SB 884's legislative record makes clear that these state-imposed restrictions continue to be targeted at Milwaukee and its disproportionately African-American and Latino population. *Compare* Dec. 3, 2018 Joint Comm. on Finance - Part 1, Wisconsin Eye, http://www.wiseye.org/Video-Archive/Event-Detail/evhdid/12961, at 2:34:22 - 2:36 ("why should Milwaukee have all this time to early vote?"), *and* Dec. 4, 2018 Assembly Floor Session - Part 2, Wisconsin Eye, http://www.wiseye.org/Video-Archive/Event-Detail/evhdid/12963, at 1:40:16 ("the gentleman from the Eighty-ninth repeatedly heard from rural constituents that had animosity toward Milwaukee for starting six weeks early and felt that was unfair—let's empower all of the municipalities to do that."), *with One Wisconsin Inst., Inc.*, 198 F. Supp. 3d at 924 (discussing statements targeted at Madison and Milwaukee). Thus, "[t]he legislature's ultimate objective [remains] political: Republicans s[eek] to [regain] control of the state government. But the methods that the legislature chose to achieve that result involve[s] suppressing the votes of Milwaukee's residents, who are disproportionately African American and Latino." *Id.* at 925. This Court has already found these restrictions unconstitutional and in violation of the Voting Rights Act. Accordingly, this Court should order Defendants not to enforce the state-imposed early voting restrictions in Section 1ĸ of SB 884 as they are in direct violation of this Court's injunction.

### B. IDPP Codification and Changes

SB 884 codifies into statutory law the IDPP that this Court found unconstitutional and ordered to be reformed or replaced. Indeed, the codification makes no substantive changes to the

13

IDPP that would address any of the concerns that this Court expressed about the severe burdens imposed by the IDPP. *Id.* at 916 ("Even now, citizens who lack vital records can obtain free IDs only after navigating the complicated IDPP."); *id.* (explaining that the IDPP "makes it unnecessarily difficult to obtain an ID"); *id.* at 949 ("Even petitioners who succeed in navigating the IDPP do so only after enduring severe burdens."). Moreover, it only *increases* the likelihood of disenfranchisement as it cuts the effective period of the receipts valid for voting in half, shortening the period from the 180 days ordered by this Court to 60 days. Indeed, it is precisely the availability of these receipts that "was critical to the court's decision to stay, pending appeal, its order that IDPP be fundamentally reformed." IDPP Order, at 1. And it is the provision of receipts that "provide[s] reasonable assurance that those without an acceptable voting ID can get one without undue burden." October 2016 Order at 6. Thus, this Court ordered that the IDPP receipts be valid for 180 days after issuance as opposed to 60 days. *Id.* at 7-8. Section 92 of SB 884's reversal of that Order—without the provision of any constitutional safeguards or substantive reform of the IDPP—therefore directly violates this Court's injunction and cannot be enforced.

### C. University and College ID Expiration Dates

Section 1 of SB 884 provides that "[a]n unexpired identification card issued by a university or college in this state that is accredited, as defined in s. 39.30 (1) (d), <u>or by a technical college in this state that is a member of and governed by the technical college system under ch. 38</u>, that contains the date of issuance and signature of the individual to whom it is issued and that contains an expiration date indicating that the card expires no later than 2 years after the date of issuance" can be accepted as an ID valid for voting. Ex. D. at 26 (Legislative History). The statute fails to remove the requirement that those IDs or university and college IDs "contain[] an expiration date," a requirement that was expressly struck down by this Court in its injunction. *One Wisconsin Inst.,*

*Inc.*, 198 F. Supp. 3d at 962 ("The only thing that will change is that the ID card that a college or university student actually presents at the polls can be expired."). The application of an expiration date requirement to university and college IDs (including technical colleges) is therefore plainly out of line with this Court's order, and the Court should order that the expiration requirement not be enforced as to this provision.

## CONCLUSION

Plaintiffs respectfully request that the Court enter an order requiring that Defendants comply with the July 29, 2016 injunction and corresponding October 13, 2016 Order issued by this Court by prohibiting them from implementing SB 884's state-imposed restrictions on early voting (Section 1K), 60-day limitation for IDPP receipts (Section 92), and expiration dates for college and university IDs (Section 1).

DATE: December 17, 2018

Respectfully submitted,

**PERKINS COIE LLP**

By  /s/ Bruce Spiva

Marc E. Elias
MElias@perkinscoie.com
Bruce V. Spiva*
BSpiva@perkinscoie.com
Elisabeth C. Frost
EFrost@perkinscoie.com
Aria C. Branch
ABranch@perkinscoie.com
Amanda R. Callais** (*application for admission forthcoming*)
ACallais@perkinscoie.com
700 Thirteenth Street, N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-6211

Charles G. Curtis, Jr.
CCurtis@perkinscoie.com
One East Main Street, Suite 201
Madison, WI 53703
Telephone: (608) 663-7460
Facsimile: (608) 663-7499

Bobbie J. Wilson
BWilson@perkinscoie.com
505 Howard Street, Suite 1000
San Francisco, CA 94105
Telephone: (415) 344-7000
Facsimile: (415) 344-7050

*Attorneys for Plaintiffs*

*Attorney of Record