IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ONE WISCONSIN INSTITUTE, INC.,
CITIZEN ACTION OF WISCONSIN EDUCATION
FUND, INC., RENEE M. GAGNER,
ANITA JOHNSON, CODY R. NELSON,
JENNIFER S. TASSE, SCOTT T. TRINDL,
MICHAEL R. WILDER, JOHNNY M. RANDLE,
DAVID WALKER, DAVID APONTE, and
CASSANDRA M. SILAS,

    Plaintiffs,

 v.

MARK L. THOMSEN, ANN S. JACOBS,
BEVERLY R. GILL, JULIE M. GLANCEY,
STEVE KING, DON M. MILLS,
MICHAEL HAAS, MARK GOTTLIEB, and
KRISTINA BOARDMAN,
*all in their official capacities*,

    Defendants.

OPINION and ORDER

15-cv-324-jdp

---

JUSTIN LUFT, et al.,
on behalf of themselves and all others similarly situated,

    Plaintiffs,

 v.

TONY EVERS, et al.,

    Defendants.

OPINION and ORDER

20-cv-768-jdp

---

These consolidated cases involve challenges to Wisconsin's ID petition process (IDPP), which is how Wisconsin residents obtain an ID valid for voting if they don't have the required documentation. The question before the court now is what relief is needed to alleviate unreasonable burdens on those who need to obtain an ID though the IDPP before the

November 3 general election. The court will direct the Wisconsin Election Commission and the Department of Transportation to make modest changes to their policy on distributing new and replacement temporary IDs and to provide targeted outreach to potential voters who are most likely to need the IDPP. The court will defer decisions on more fundamental reforms to the IDPP until after the general election is certified.

BACKGROUND

This court concluded in 2016 that the IDPP imposes unreasonable burdens on the right to vote, so the court directed defendants to implement certain reforms. *See One Wisconsin Inst., Inc. v. Thomsen,* 198 F. Supp. 3d 896, 963–64 (W.D. Wis. 2016). But because the 2016 presidential election was looming, the court stayed its order on long-term reforms and directed defendants to take interim measures to: (1) "allow anyone who enters the IDPP to get a receipt that will serve as a valid ID for the November 2016 election," Dkt. 255, at 2; and (2) inform the public about the IDPP, Dkt. 293 and Dkt. 306.[1]

The case was then appealed, and the Court of Appeals for the Seventh Circuit issued its decision on June 29, 2020, for both *One Wisconsin* and *Luft*, a case from the Eastern District of Wisconsin. *See Luft v. Evers*, 963 F.3d 665 (7th Cir. 2020). The court of appeals didn't rule on the constitutionality of the IDPP because "[t]he district court acted on a record assembled years ago," and the state represented that it had made changes to the IDPP since 2016. *Id.* at 680. So the court of appeals directed this court to take a fresh look at the process to determine whether "every eligible voter can get a qualifying photo ID with reasonable effort." *Id.* at 679.

---

[1] Docket citations are to Case no. 15-cv-324-jdp.

The court received the mandate from the court of appeals on July 29, 2020, *see* Dkt. 339, and, after consolidating the cases, Dkt. 361, the court directed the parties to "file cross motions on any substantive issues to be decided before the election." Dkt. 364, at 2. Defendants moved for summary judgment, Dkt. 390, and plaintiffs in both *One Wisconsin* and *Luft* moved for a preliminary injunction, Dkt. 397 and Dkt. 398. The Wisconsin Legislature also moved for leave to file an amicus brief, Dkt. 411, and the court will grant that motion. The court held a hearing via videoconference on the parties' motions on September 25 and issued an oral ruling, denying defendants' motion for summary judgment, granting some preliminary relief to plaintiffs, denying other requests, and deferring other issues until after the election. This order will summarize the court's reasoning and conclusions.

ANALYSIS

The court is in much the same position now as it was in 2016, except now there is even less time before the impending general election. As it did in 2016, the court will focus on the factors that might prevent qualified electors from casting their ballots in the upcoming election. This approach will provide relief where it's needed most without causing confusion by changing the rules for voters or poll workers.

**A.  Defendants' motion for summary judgment**

The court begins with defendants' motion for summary judgment. Defendants' position is that they are entitled to summary judgment because eligible voters can obtain a voting-compliant ID by "mak[ing] a trip to the DMV and fill[ing] out simple application forms." Dkt. 399, at 10. This argument is referring to the receipts voters receive while their ID petitions are pending. Because those receipts can be used as a voter ID, defendants say that there is no

undue burden on the right to vote. The court considered and rejected this argument in 2016 because the receipts are temporary and petitioners must still convince the DMV to exercise its discretion to issue a long-term ID. *One Wisconsin Inst., Inc. v. Thomsen*, 198 F. Supp. 3d 896, 916 (W.D. Wis. 2016). "[Q]ualified electors are entitled to vote as a matter of constitutional right, not merely by the grace of the executive branch of the state government." *Id.*

Defendants point to nothing in *Luft* suggesting that the temporary receipts satisfy the state's constitutional duties. After all, the state was already using the receipts in 2016, so there would have been no reason to require further proceedings if the court of appeals believed that no more was required.

It is true that defendants have refined the process so that temporary receipts are now automatically renewed every 60 days until a petition is granted or denied. This alleviates some burden on petitioners, but plaintiffs point to examples of petitioners who continue to get "stuck" in the process for months or even years through no fault of their own while they wait for state officials to exercise their discretion. Defendants do not acknowledge that group of petitioners in their opening brief, even though those petitioners were the focus of the court's 2016 decision.

Plaintiffs lay the blame for the continued problems on the way the IDPP is implemented, most notably that the state fails to adhere to its own standard that a petition should be granted if it is "more likely than not" that the petitioner is eligible to vote. Instead, plaintiffs say, the state continues searching for more corroborating documentation, subjecting petitioners to unreasonable demands for information and leaving them in a state of limbo indefinitely, even after it becomes clear that petitioners are qualified.

4

The parties dispute the extent and causes of some petitioners' continued difficulties in obtaining a long-term ID. But the court is persuaded that the evidence cited by plaintiffs is sufficient to show that there are genuine issues of fact on the question whether qualified electors continue to face unreasonable burdens on their right to vote. *See* Fed. R. Civ. P. 56(a). So the court will deny defendants' motion for summary judgment.

## B. Plaintiffs' motions for a preliminary injunction

The ultimate question before the court is whether "every eligible voter can get a qualifying photo ID with reasonable effort." *Luft*, 963 F.3d at 679. To obtain a preliminary injunction, a plaintiff must show that: (1) it will suffer irreparable harm without the relief; (2) traditional legal remedies would be inadequate; and (3) it has some likelihood of prevailing on the merits of its claims. *Speech First, Inc. v. Killeen*, 968 F.3d 628, 637 (7th Cir. 2020). If a plaintiff makes such a showing, the court proceeds to a balancing analysis, where the court must weigh the harm the denial of the preliminary injunction would cause the plaintiff against the harm to the defendant if the court were to grant it. *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1068 (7th Cir. 2018). For the reasons given in the previous section, the court concludes that plaintiffs have shown some prospects of success on the merits. And, should any voter fail to receive a voting credential before the election, they would suffer irreparable harm by missing the chance to vote in the election.

Both sets of plaintiffs include a fulsome list of injunctions they want the court to issue. *See* Dkt. 403, at 79–85 and Dkt. 407, at 8–11. But most of their requests relate to permanent reforms that the court need not address now. Instead, the court will focus on two narrow issues: (1) removing unreasonable barriers to voting in the general election for those petitioners with

5

pending or new applications in the IDPP; (2) providing public education about the IDPP to those who need it most.

As for the first category, the court will order the following. For eligible voters who submit an IDPP application between October 19 and November 2, 2020, defendants must send the temporary receipt by overnight mail. For already-issued temporary receipts that expire between October 19 and November 2, 2020, defendants may use First Class or Priority Mail to send replacement receipts if they are placed in the mail by October 9. Otherwise, replacement receipts for those expiring between October 19 and November 2, 2020, must be sent by overnight mail.

As observed by the court in *Democratic Nat'l Comm. v. Bostelmann*, No. 20-cv-249-wmc, 2020 WL 5627186, at *9 (W.D. Wis. Sept. 21, 2020), and acknowledged by Megan Wolfe (Administrator for the Wisconsin Elections Commission), the United States Postal Service is continuing to face challenges with timely delivery. The court's order, which represents only a modest change to defendants' current policies, is necessary to help minimize the risk that eligible voters will be left without a valid credential on election day. Defendants haven't identified any harm they will suffer from this requirement, so the public interest and the balance of harms favors this approach. *See* Dkt. 413 (Boardman Decl., ¶ 9) (acknowledging that "DMV could overnight mail IDPP receipts beginning October 19").

Plaintiffs seek more relief related to the temporary receipts, including individualized outreach to petitioners, allowing the use of expired receipts, and allowing voters without a receipt to use an affidavit instead. But plaintiffs haven't shown that such relief is narrowly tailored to alleviate unreasonable burdens on the right to vote, so the court declines to impose

those additional requirements, some of which would requiring retraining of poll workers and could lead to confusion at the polls.

As for public education efforts, plaintiffs seek a wide variety of relief, including mailings to all Wisconsin residents who are eligible to vote but don't have an ID, expanded outreach, and changes to any publication, website, or mailing that mentions the voter ID requirement. The court is not persuaded that these measures are constitutionally required or that plaintiffs will be irreparably harmed without them.

Both this court and the court of appeals directed defendants to engage in certain public education efforts in 2016. But at the time, the IDPP was still relatively new, and its operation was in flux, as the state continued making changes. Plaintiffs presented persuasive evidence in 2016 that the state was providing inaccurate information about the IDPP and that even state employees responsible for providing information to the public about the IDPP were uninformed.

The IDPP has now been in place for several years, so the need for intensive public education is diminished. The court has reviewed Administrator Wolfe's declaration explaining the Commission's outreach efforts, Dkt. 402, and the court concludes that they are adequate for the most part. But plaintiffs have identified two discrete areas that require improvement.

First, plaintiffs have pointed out problems with outreach to underserved communities. For example, the Commission was still providing information on its website stating that homeless individuals needed a birth certificate in order to vote. *See* Dkt. 424. Defendants acknowledged the mistake during the September 25 hearing, explaining that the website has since been updated. But the misinformation is evidence that more outreach to the homeless is needed. Plaintiffs have agreed to provide a list of homeless service organizations and their

7

contact information to defendants and the court by Wednesday, October 30. If the court approves the list, defendants will send their digital "voter outreach toolkit" to the specified organizations. Defendants will also obtain from KW2 (a media consultant for the Commission) a list of minority media organizations, and the Commission will include those organizations on its press distribution list.

Second, plaintiffs pointed to a lack of information about IDPP available at polling places. For example, when voters submit a provisional ballot, they are not informed how to obtain an ID through the IDPP. Lack of a qualifying ID is one of the reasons that a voter may need to cast a provisional ballot, so the court is persuaded that information about the IDPP should be readily available at the polls. Administrator Wolfe acknowledged during the hearing that voters casting a provisional ballot could be given the already-prepared "palm card," a one-page information sheet that clearly and succinctly explains how a voter enters the IDPP and what the voter can expect after initiating the process. Wolfe also said that she could direct municipal clerks to post a copy of the palm card at polling places. The court will direct defendants to take both actions.

Although the election is near, the limited relief ordered by the court doesn't implicate the so-called *Purcell* principle, under which "lower federal courts should ordinarily not alter the election rules on the eve of an election." *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020) (citing *Purcell v. Gonzalez*, 549 U.S. 1 (2006)). The purpose of the *Purcell* principle is to avoid "judicially created confusion." *Id.* In this case, the court isn't altering any election rules; rather, the court's order is directed at ensuring that eligible voters know what the rules are and can exercise their established rights. Ensuring prompt receipt of voting

credentials and informing the public about the IDPP should minimize confusion, not increase it.

The court finds that the relief ordered is necessary to avoid irreparable harm to petitioners, that plaintiffs are likely to succeed in showing that their right to vote will be unreasonably burdened without the relief, and that the public interest favors granting the relief. Accordingly, the court will issue the attached Preliminary Injunction Order.

ORDER

IT IS ORDERED that:

1. The Wisconsin Legislature's motion for leave to file an amicus brief, Dkt. 411, is GRANTED.

2. Defendants' motion for summary judgment, Dkt. 398, is DENIED.

3. Plaintiffs' motions for a preliminary injunction, Dkt. 390 and Dkt. 397, are GRANTED in part and DENIED in part as explained in this opinion and the attached order.

4. Plaintiffs may have until September 30, 2020, to provide the court and defendants with a list of homeless service organizations.

5. After the results of the November 3 election are certified, the court will schedule a status conference to discuss with the parties what additional steps are needed to bring this case to a resolution.

Entered September 28, 2020.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge